IN THE UNITED STATES COURT OF APPEALS FOR
FOURTH CIRCUIT

**MARYLAND SHALL ISSUE, INC.,** *et al.,*

            *Plaintiffs,*          No.    23-1351

                  v.

**ANNE ARUNDEL COUNTY,
MARYLAND**

            *Defendant.*

**PLAINTIFFS-APPELLANTS' MOTION TO EXPEDITE THE APPEAL**

**I.    INTRODUCTION:**

Pursuant to Rule 27 of the Federal Rules of Appellate Procedure and Rules 12(c) and 27 of this Court's local rules, plaintiffs-appellant, Maryland Shall Issue, Inc., et al., respectively move this Court for an order expediting this Court's consideration of this appeal. In this case, the defendant, Anne Arundel County ("the County") enacted an ordinance, Bill 108-21, compelling licensed firearms detailers in the County to distribute County-created or adopted literature. The district court sustained this content-based, compelled speech under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). A copy of the district court's decision and opinion is attached. The district court held that this compelled distribution requirement was merely regulated commercial speech, thereby declining to follow the Supreme Court's decision in *National Institute of*

1

*Family Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018) ("*NIFLA*").

While the case was pending in district court, the County agreed to withhold enforcement of its ordinance while the case was pending in district court. With the district court's decision, the County is now enforcing its ordinance and compelling the plaintiff dealers to distribute the County's literature. This Motion seeks expedited resolution of the appeal. The district court's decision is wrong, and the resulting renewed enforcement of the County's ordinance irreparably violates the plaintiff dealers' First Amendment rights on a continuing and daily basis. A speedy resolution of this appeal is thus necessary to protect those rights.

Counsel for the County has advised the undersigned that the County takes "no position" with respect to this request for expedition but would object to any order that would shorten its time for briefing or for requesting an extension. Counsel for the County declined to say whether the County would file a response to this motion. Under the current briefing order, the Brief of Appellants is due May 15, 2023. Plaintiffs-appellants are prepared to brief this appeal and conduct argument on an expedited basis, the County's reticence notwithstanding.

## II.　STATEMENT OF THE CASE

### A.　Bill 108-21

In their Complaint filed April 11, 2022 (attached), plaintiffs challenge the constitutionality of Bill 108-21 ("the Bill"), which was enacted into law by defendant, Anne Arundel County, MD ("the County), on January 10, 2022, with an

effective date of April 10, 2022. Complaint ¶ 1. Bill 108-21 amends the Anne Arundel County Code, Article 12, Title 6, Section 12-6-108, to provide:

(A) Duties of Health Department. The Anne Arundel County health department shall prepare literature relating to gun safety, gun training, suicide prevention, mental health, and conflict resolution and distribute the literature to all establishments that sell guns or ammunition.
(B) Requirements. Establishments that sell guns or ammunition shall make the literature distributed by the health department visible and available at the point of sale. These establishments shall also distribute the literature to all purchasers of guns or ammunition.
C) Enforcement. An authorized representative of the Anne Arundel County Health Department may issue a citation to an owner of an establishment that sells guns or ammunition for a violation of subsection 8(b).

Bill 108-21 also provides that "a violation of this section is a Class C civil offense pursuant to § 9-2-101 of this code." A Class C civil offense under Section 9-2-101 of the County Code is punishable by a fine of "$500 for the first violation and $1,000 for the second or any subsequent violation." Complaint ¶¶ 6, 7.

### B. Plaintiffs' Contention:

The County implemented Bill 108-21 by requiring County firearms dealers to distribute two pieces of literature. The first is a pamphlet entitled "Firearms and Suicide Prevention" published jointly by the National Shooting Sports Foundation ("NSSF") and the American Foundation for Suicide Prevention. A copy of that pamphlet is attached as Exhibit B to the Complaint. The second piece of literature is a 6-inch square page setting forth information concerning County "resources" for "conflict resolution," including suicide. A copy of that piece of literature is attached as Exhibit C to the Complaint. Complaint ¶¶ 1, 2.

The County's multipage pamphlet, entitled "Firearms and Suicide Prevention" (Complaint Exh. B) flatly states that "Some People are More at Risk for Suicide than Others" and includes within that category people who have "Access to lethal means, including firearms and drugs." On its face, that is an assertion of causal effect, i.e., that mere "access" to firearms makes a person "more at risk for suicide." On the same page, the pamphlet states that "[r]isk factors are characteristics or conditions that increase the chance that a person may try to take their life."

Plaintiffs' expert, Dr. Gary Kleck, thus testified in his report (attached), that "[t]here is at present no reliable body of scientific evidence to support the County's claim, via its mandated 'Firearms and Suicide Prevention' pamphlet, that access to firearms causes an increase in the risk that a person will kill themselves. The claim is at best highly questionable; at worst, it is false." Prof. Kleck Rept. at 20. Similarly, Dr. Kleck stated at his deposition that this pamphlet effectively states that "possession of a gun or ownership of a gun increases the likelihood one will commit suicide." Kleck Dep. Tr. at 15 (Def. Exh. 3). He explains that the statement that "Some People Are More At Risk For Suicide Than Others," "introduces the topic of risk factors, which is reinforced in the lower right text, which reads, 'Risk factors are characteristics or conditions that increase the chance that a person may try to take their life.' That's unambiguously an assertion about causal effects." Kleck Dep. at 93-94. As he further explained, "implicit in the notion that owning a gun is a risk factor for suicide, and any reader would think suicide is a bad thing, then the

4

implication is – the recommendation implied is don't own a gun." Id. at 18.

### C. The District Court's Decision

After extensive discovery, plaintiffs and the County submitted cross-motions for summary judgment. Plaintiffs' motion was supported by the expert witness report of Prof. Kleck, the interrogatories answers submitted by each of the plaintiffs and portions of the deposition transcriptions of each of the plaintiffs and of Prof. Kleck, as taken by the County. The County's cross-motion for summary judgment was supported by the expert reports of two purported experts and numerous exhibits.

In assessing this record, the district court agreed with plaintiffs that the County's literature was content-based compelled speech and thus presumptively unconstitutional. Slip op. at 17-18. Rather than apply that presumption, the district court relied on *Zauderer* to hold that the compelled literature created or adopted by the County was merely (1) commercial speech, (2) purely factual and uncontroversial information, and (3) reasonably related to the County's interest. Id. at 18. Plaintiffs assert that the district court's reliance on *Zauderer*, its failure to apply the clear holding of *NIFLA,* which sharply limited *Zauderer*, and its holding that the County's literature was merely factual and uncontroversial regulations of commercial speech are wrong as a matter of law.

### III. ARGUMENT

*Zauderer* assessed the constitutionality of restraints on advertising and solicitation

5

by attorneys. The Court first held that "'commercial speech' is entitled to the protection of the First Amendment, albeit to protection somewhat less extensive than that afforded 'noncommercial speech,'" finding that the "speech at issue" in *Zauderer*, was commercial speech because it restricted "advertising pure and simple." (471 U.S. at 637).

*NIFLA* sharply limited the reach of *Zauderer,* holding that the more deferential view permitted by *Zauderer* is "limited to 'purely factual and uncontroversial information about the terms under which ... services will be available.'" *NIFLA*, 138 S.Ct.. at 2172, quoting *Zauderer*, 471 U.S. at 651. The Court then reiterated its holding in *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 573 (1995), that "*Zauderer* **does not apply** outside of these circumstances." *NIFLA*, 138 S.Ct. at 2172 (emphasis added). As explained in *Hurley*, while the State "may at times 'prescribe what shall be orthodox in commercial advertising' by requiring the dissemination of 'purely factual and uncontroversial information,' outside that context it may not compel affirmance of a belief with which the speaker disagrees." *Hurley*, 515 U.S. at 573 (citations omitted) (emphasis added).

The district court first held that the County's literature merely regulated commercial speech. According to the district court, the County need only show that the compelled speech is "in the context of the commercial transaction." Slip op. at 21. Thus, according to the district court, the regulated compelled speech need not

"propose a commercial transaction" and need not even relate to advertising or the prevention of consumer confusion. Id. at 22. The court likened the County's literature to uncontroversial health and safety warnings about a product. Id. at 18, 23.

The district court also rejected plaintiffs' argument and plaintiffs' expert report that the County's compelled literature stated that mere access to firearms was a causal factor in suicides. The district court accepted the County's argument that the literature was intended to convey merely that suicides and firearms were correlated, not that access to firearms actually was a causal factor in suicides. The district court thus opined that the literature merely stated that firearms were a "risk factor," stating "[b]y using the language of "risk factor" rather than "cause," the pamphlet specifically avoids making any causal accusation." Slip op. at 26. Purporting to rely on Black's Law Dictionary's definition of a "risk factor" as "'[a]nything that increases the possibility of harm or any other undesirable result,'" the court reasoned that the literature did not assert a causal relationship. Slip op. at 26 quoting BLACK'S LAW DICTIONARY (11th ed. 2019). According to the district court, that statement merely asserted a correlation, not a causal relationship, and that mere "correlation does not prove causation." Slip op. at 26, quoting *MSI v. Hogan*, 971 F.3d 199, 213 (4th Cir. 2020).

In plaintiffs' view, the district court's application of *Zauderer* and concomitant refusal to apply *NIFLA* was error. First, the court wrongly ignored

*NIFLA's* holding that *Zauderer* is "limited to 'purely factual and uncontroversial information **about** the **terms under which ... services will be available.**'" *NIFLA*, 138 S.Ct. at 2172, quoting *Zauderer*, 471 U.S. at 651 (emphasis added). In *NIFLA*, the Court expressly rejected *Zauderer* because the speech imposed upon licensed clinics by California in that case did not "relate[ ] to the services that licensed clinics provide[d]," and it concerned the controversial topic of abortion. *NIFLA*, 138 S.Ct. at 2372. Yet, in this case, the district court never so much as even *mentioned* that key ruling even though it was prominent in the briefing below. Nothing in the County's literature addresses "the terms under which services" by the dealers are available. The plaintiff dealers are not in the business of providing suicide or conflict resolution services.

      The district court's ruling that the County need only show that the compelled speech is "in the context of the commercial transaction" is remarkable and without support. Slip op. at 21. According to the district court, the regulated compelled speech need not "propose a commercial transaction" or pertain to advertising or consumer fraud. Id. at 22. Instead, the district court likened the County's compelled speech to product safety warnings, such as "choking hazard labels on toys' packaging and the long list of drugs' side effects." Id. at 23. Such health and safety warnings are of a type "long considered permissible," *NIFLA*, 138 S.Ct. at 2376, but these types of warnings are not remotely akin to the County's literature at issue in this case. Every purchaser of firearms from a licensed dealer already knows that a

8

firearm can be dangerous or misused. Compare *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001) (holding that the "First Amendment also constrains state efforts to limit the advertising of tobacco products, because so long as the sale and use of tobacco is lawful for adults"). Nothing in the County's literature purports to "warn" of hidden dangers or complications. As Dr. Kleck stated, the real and evident purpose of the literature is to discourage the purchase and possession of firearms and ammunition by linking possession of firearms to suicide. Yet, the purchase and possession of firearms and ammunition by law-abiding persons are constitutional rights. See, e.g., *District of Columbia v. Heller*, 554 U.S. 570 (2008); *NYSRA v. Bruen*, 142 S.Ct. 2111 (2022); *MSI*, 971 F3d at 216-17. The County has no legitimate interest in discouraging or demonizing the exercise of Second Amendment rights.

The district court's holding is also in direct conflict with this Court's decision in *Recht v. Morrisey*, 32 F.4th 398, 407 (4th Cir. 2022), which defined "commercial speech" to be an "'expression related *solely* to the economic interests of the speaker and its audience.'" *Quoting Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 561 (1980) (emphasis added). *Recht* also held that the statute's disclosure requirement, at issue in that case, was consistent with *NIFLA* because, as in *Zauderer*, it "directly targeted at promoting the State's interest 'in dissipat[ing] the possibility of consumer confusion or deception.'" Id., quoting *Zauderer*, 471 U.S. at 651. This Court stressed as well that the disclosure requirements there at issue "do so by providing information *directly connected* to

9

the subject of the advertisement, rather than by compelling speech concerning unrelated or competing services." Id. (emphasis added). The district court simply ignores these holdings in *Recht*.

In this case, the County's literature regarding suicide and conflict result is not "directly connected" to any speech made by plaintiff dealers in selling a firearm or ammunition. Indeed, while the dealers are required to distribute this literature on every sale, the ordinance also requires dealers to display the literature *regardless* of making a sale. The County purported is concerned with the misuses of firearms, such as suicide or illegal conflict resolution, but firearms and ammunition are overwhelmingly used for legitimate and constitutionally protected purposes, including self-defense in and outside the home. Yet, the dealers are nonetheless compelled to display and distribute the County's literature, regardless of these legitimate uses. No one believes that the County's literature is an "expression related solely to the economic interest" the dealers may have. *Recht*, 32 F.4th 407. Certainly, the County does not have any such economic interests. The district court held as much. Slip op. at 23 ("the County has no economic motivation").

Yet, under the district court's boundless approach to commercial speech, economic interests and legitimate and constitutionally protected uses are entirely irrelevant. For example, under the district court's approach every gasoline station owner or franchisee could be coerced into displaying and distributing the government's preferred views about carbon dioxide emissions and the perils of

10

global climate change as long as the government could show a "correlation" between internal combustion engines and climate change. Indeed, if correlation is all it takes, private hospitals, pharmacies, and other healthcare facilities could be made to distribute government literature about sickness, as there is an undoubted correlation between sickness and the services and products available at such facilities.

As these examples illustrate, there is no principled stopping point to the district court's willingness to indulge the County's classic logical fallacies of *Post Hoc Ergo Propter Hoc* and/or *Cum Hoc Ergo Propter Hoc*. If access to firearms is not causal for suicide or illegal conflict resolution (and the County has **not** asserted a causal connection justisfication in this case), then there is no point, much less a justification, to the compelled distribution of the County's literature. It is not for nothing that the Supreme Court has rejected correlation as sufficient to justify regulation of First Amendment protected conduct. See *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 800 (2011) (striking down, on First Amendment grounds, a California statute that imposed restrictions and labeling requirements on "violent video games," holding that studies "do not prove that violent video games cause minors to act aggressively (which would at least be a beginning). Causal assertions based on mere correlations are junk science. See *United States v. Valencia*, 600 F.3d 389, 425 (5th Cir.), *cert. denied*, 562 U.S. 893 (2010) ("Evidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other

11

contributory variables."); *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 298 (4th Cir. 2017) (affirming district court's exclusion of expert testimony where the expert's data pointed "only to correlation not causation."). The potential for abuse under the district court's approach is immense. See *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council Of Baltimore*, 879 F.3d 101, 111 (4th Cir.), *cert. denied,* 138 S.Ct. 2710 (2018) ("states can bend individuals to their own beliefs and use compelled speech as a weapon to run its ideological foes into the ground").

The district court likewise improperly countenanced the County's sleight of hand to dispense with the requirement that the compelled speech must be strictly limited to purely uncontroversial statements of fact. As noted, the County's literature expressly states that persons with access to firearms "**are** More at Risk For Suicide that Others." The verb "are" is the simple present tense in the second person of the verb "to be." And "the verb 'to be' means to exist." https://www.grammarly.com/blog/to-be/. On summary judgment, plaintiffs are entitled to all fair inferences created by that commonly understood usage. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Yet, the district court ignored that principle and flatly denied what is self-evident, *viz.*, that the County's literature asserts an unsupported causal relationship between access to firearms and suicide. Instead, the district court ruled that the literature merely described access to firearms as a "risk factor," and then held, *ipse dixit*, that a "risk

12

factor" is not causal. Slip op. at 25-26. That ruling blinks the expressly causal language used in the literature.

Indeed, the district court's made-up distinction between "risk factor" and causation is refuted by the very definition of "risk factor" set forth in Black's Law Dictionary on which the court purported to rely. As the district court stated, Black's definition of a "risk factor" is something that "increases the possibility of harm" but that is just another way of saying that it "**causes** an increased possibility of harm." See Mosby's Dictionary of Medicine, Nursing & Health Professionals 1634 (8th ed. 2009) (a risk factor "*causes* a person ... to be particularly susceptible to an unwanted ... event") (emphasis added). See also https://medical-dictionary.thefreedictionary.com/risk+factor ("risk factor an agent or situation that is known to make an individual or population more susceptible to the development of a specific negative condition"). Certainly nothing in the County's literature actually states that access to firearms is merely "correlated" with suicide. The term "correlated" simply does not appear in the County's literature. Only after a tortured reading of the County's literature as presenting merely a "correlational relationship" was the district court able to rule the literature presented an entirely factual and uncontroversial statement. Slip op. at 27.

At a minimum, if access to firearms is merely "correlated" with suicide, as the district court ruled and as the County contends, then the language used in the County's literature is highly misleading and deceptive. No one, not even the County,

has argued that the County has a legitimate interest in compelling speech that is misleading. At a minimum, any causal effect between access to firearms and suicide and illegal conflict resolution is controversial and thus not purely factual under *Zauderer* and *NIFLA*. See *American Beverage Assn. v. City and County of San Francisco*, 916 F.3d 749, 761 (9th Cir. 2019) (Ikuta, J., concurring) (noting that product warnings there at issue were not uncontroversial and did not "relate to the terms on which the advertisers provide their services"); Id., at 764 (Christen, J., concurring) ("*Zauderer* and subsequent case law leave no doubt that any government-compelled speech must be, at the very least, factually accurate.").

This appeal presents important issues of First Amendment law concerning the "commercial speech" doctrine and the proper application of *NIFLA* and *Zauderer*. The plaintiff dealers are compelled to display the County's literature and are subjected to the County's ordinance on every sale of a firearm or ammunition. A failure to comply, even by mistake or inadvertence, could result in ruinous fines, as the County ordinance lacks any *mens rea* element. Every day, the plaintiff dealers' First Amendment rights to be free of compelled speech are sacrificed. This motion is modest. It merely seeks to have these issues addressed on an expedited basis so as to minimize the length of time the plaintiff dealers are subjected to the County's unconstitutional ordinance.

**CONCLUSION**

The Motion to Expedite should be granted. This appeal should be briefed,

argued and decided on an expedited basis.

                                                Respectfully submitted,

                                                */s/ Mark W. Pennak*

                                                MARK W. PENNAK
                                                MARYLAND SHALL ISSUE, INC.
                                                9613 Harford Rd., Ste C #1015
                                                Baltimore, MD 21234-21502
                                                mpennak@marylandshallissue.org
                                                Phone: (301) 873-3671