No. 23-1351

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**MARYLAND SHALL ISSUE, INC., et al,**

*Appellants*,

**v.**

**ANNE ARUNDEL COUNTY, MARYLAND,**

*Appellee.*

_____

On Appeal from the United States District Court
for the District of Maryland
(Stephanie A. Gallagher, District Judge)

_____

**AMICUS CURIAE BRIEF OF THE STATE OF MARYLAND
IN SUPPORT OF APPELLEE**

_____

|  |  |
|---|---|
|  | ANTHONY G. BROWN <br> Attorney General of Maryland <br><br> ROBERT A. SCOTT <br> RYAN R. DIETRICH <br> Assistant Attorneys General <br> 200 Saint Paul Place <br> 20th Floor <br> Baltimore, Maryland 21202 <br> rscott@oag.state.md.us <br> (410) 576-7055 |
| July 17, 2023 | Attorneys for the State of Maryland |

## TABLE OF CONTENTS

Page

INTEREST OF AMICUS ................................................................................................1

ARGUMENT ..................................................................................................................2

I.  SUICIDE, INCLUDING BY FIREARM, IS A SERIOUS PUBLIC HEALTH PROBLEM IN MARYLAND. ...................................................................................2

II. THE ORDINANCE ENACTED BY ANNE ARUNDEL COUNTY FALLS WITHIN THE BROAD AUTHORITY OF STATE AND LOCAL GOVERNMENTS TO PROTECT THE HEALTH AND SAFETY OF THEIR RESIDENTS. ...............................6

III. ANNE ARUNDEL COUNTY'S FOCUSED REQUIREMENT OF DISCLOSURE OF SUICIDE AWARENESS INFORMATION AT THE POINT OF SALE OF FIREARMS ALIGNS WITH CAREFULLY TAILORED MARYLAND STATE LAWS DESIGNED TO PREVENT FIREARM-RELATED SUICIDES. ...................................8

CONCLUSION ............................................................................................................13

CERTIFICATE OF COMPLIANCE .....................................................................14

# TABLE OF AUTHORITIES

Page

## Cases

*Eastern Diversified Props., Inc. v. Montgomery County*, 319 Md. 45 (1990) ..........7

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ........................................................6

*Tyler v. Hillsdale County Sheriff's Office*, 837 F.3d 678 (6th Cir. 2016) .............6, 7

*Washington v. Glucksburg*, 521 U.S. 702 (1997) ...................................................6

## Constitutional Provisions

U.S. Const. amend. I ..........................................................................................2, 13

Md. Const. art. XI-A ..................................................................................................7

## Statutes

2023 Md. Laws ch. 622, § 1 (Senate Bill 858) ................................................10, 11

2023 Md. Laws ch. 651, § 1 (Senate Bill 824) .......................................................11

Md. Code Ann., Cts. & Jud. Proc. §§ 3-1501 – 13-510 (LexisNexis 2020) .............9

Md. Code Ann., Crim. Law § 4-104 (LexisNexis 2021) ........................................10

Md. Code Ann., Fam. Law §§ 4-504 – 4-512.1 (LexisNexis 2019) .........................9

Md. Code Ann., Health-Gen § 13-3901 (LexisNexis 2019) ....................................9

Md. Code Ann., Local Gov't § 10-206(a)(2) (LexisNexis 2013) .............................7

Md. Code Ann., Local Gov't §§ 10-101 – 10-330 (LexisNexis 2013) ....................7

Md. Code Ann., Pub. Safety § 5-303 (LexisNexis 2022) .......................................11

Md. Code Ann., Pub. Safety § 5-306(a)(5)(ii) (LexisNexis 2022) .........................11

Md. Code Ann., Pub. Safety § 5-605(c)(1)(ii) (LexisNexis 2022) ...........................9

## Miscellaneous

Jeffrey A. Bridge et al., *Youth Suicide During the First Year of the COVID-19 Pandemic*, Pediatrics (March 1, 2023) ...........................................................5, 6

Maryland Department of Health, *Circumstances of Suicide Deaths in Maryland: Data from the 2003-2020 Maryland Violent Death Reporting System* (2023) ....4

Maryland Department of Health letter to Governor Hogan, et al., regarding action plan under S.B. 521 (March 25, 2022) .......................................................9, 10

Matt Bush, *Jaelynn's Law Passes Maryland Senate, Tightening Requirements About Gun Storage*, WYPR (March 15, 2023)......................................................11

National Center for Injury Prevention and Control, Centers for Disease Control and Prevention, *Suicide Prevention Resource for Action: A Compilation of the Best Available Evidence* (2022)................................................................................12

Paul S. Nestadt et al., *Prevalence of Long Gun Use in Maryland Firearm Suicides*, Injury Epidemiology (February 3, 2020)........................................................4, 5

Sally C. Curtin et al., National Vital Statistics System, Centers for Disease Control and Prevention, *Provisional Numbers and Rates of Suicide by Month and Demographic Characteristics: United States, 2021* (September 2022)...............5

Sherry Everett Jones et al., Centers for Disease Control and Prevention, *Mental Health, Suicidality, and Connectedness Among High School Students During the COVID-19 Pandemic – Adolescent Behaviors and Experiences Survey, United States, January – June 2021*, Morbidity and Mortality Weekly Report (April 1, 2022) ...................................................................................................3

Vital Statistics Administration, Maryland Department of Health, *Maryland Vital Statistics Annual Report 2020* ...........................................................................3

## INTEREST OF AMICUS

Suicide is a serious public health problem in Maryland and nationwide that affects people of all ages, races, genders, and backgrounds. Maryland has one of the lowest per capita suicide rates among all states but remains fully committed to "zero suicides" as an aspirational goal. To that end, Maryland supports state, local, and community suicide prevention programming.

The Maryland Constitution and state statutes vest "charter counties," including Anne Arundel County, with broad authority to enact local laws that promote the public good, including peace, health, and welfare of their citizens. This allows local jurisdictions to focus on the particular circumstances of the problems they face and to enact appropriate policy initiatives. In this case, Anne Arundel County exercised that vested authority with a focused effort to reduce suicides by increasing awareness of suicide and related risk factors via a simple pamphlet at the point of sale of firearms—the leading method of suicide in Maryland and nationally.

No single solution exists to prevent all suicides. Instead, a comprehensive set of programs and approaches is needed in response to the many factors and circumstances that contribute to the suicide problem. As a result, the State of Maryland and its political subdivisions have a critical interest in maintaining flexibility to enact a range of sensible policies that are designed to prevent suicides. Appellants, however, advocate for an interpretation of the First Amendment that

would limit the options available to state and local governments to prevent suicides, including those that merely increase awareness of risk factors, warning signs, and resources that are available to those who may be contemplating suicide or to their loved ones.

This brief is filed under Federal Rule of Appellate Procedure 29(a)(2), which provides that "a state may file an amicus brief without the consent of the parties or leave of court."

## ARGUMENT

I.  **SUICIDE, INCLUDING BY FIREARM, IS A SERIOUS PUBLIC HEALTH PROBLEM IN MARYLAND.**

Suicide devastates families and communities in Maryland. In 2020, there were 582 deaths from suicide in Maryland. Vital Statistics Administration, Maryland Department of Health, *Maryland Vital Statistics Annual Report 2020*, at 3.[1] The age-adjusted mortality rate was 9.2 for every 100,000 Marylanders. *Id*. In 2011 that rate was 9.1 per 100,000. *Id*. at 33. Despite significant efforts by government and private entities to prevent suicides, the rate in Maryland remained stubbornly similar throughout the 2011 – 2020 decade, with a low of 8.7 in 2015 and

---

[1] Available at https://health.maryland.gov/vsa/Documents/Reports%20and%20Data/Annual%20Reports/2020Annual.pdf

2

a high of 10.3 in 2019. *Id.* For comparison, during that same time period the United States had a low of 12.3 in 2011 and a high of 14.2 in 2018. *Id.*

Although suicide impacts all demographic groups, it is more common in some groups than in others. The suicide rate in Maryland among non-Hispanic white individuals is more than twice that of non-Hispanic black individuals, and nearly three times the rate for Hispanic individuals. *Id.* The suicide rate for men is roughly five times the rate for women. *Id.* at 175-89.

Tragically, suicide heavily impacts children. Among those aged five to 14 years old, it is the second leading cause of death in Maryland, trailing only cancer. *Id.* at 197. Between the ages of 15 and 24, it is the third leading cause, trailing homicide and accidents (and ahead of cancer). *Id.* Many more children attempt or consider suicide. A 2021 survey of high school students found that in the previous 12 months 19.9% of students considered suicide and 9.9% attempted suicide. Sherry Everett Jones et al., Centers for Disease Control and Prevention, *Mental Health, Suicidality, and Connectedness Among High School Students During the COVID-19 Pandemic — Adolescent Behaviors and Experiences Survey, United States, January–June 2021*, Morbidity and Mortality Weekly Report, 18 (April 1, 2022). Faced with such a high attempt rate, limiting access by children to the most lethal means is critically important.

Firearms are the leading method of suicide in Maryland, accounting for approximately 45% of suicide deaths. Maryland Department of Health, *Circumstances of Suicide Deaths in Maryland: Data from the 2003-2020 Maryland Violent Death Reporting System*, at 23 (2023).[2] They account for significant numbers of suicides among men and women, the young and the old, urban and rural, and people of all races and ethnicities. *Id*. at 25-27. Those who have served in the armed forces are most impacted. Among this group, firearms are used in 68% of suicides. *Id*. at 26.

Many different types of firearms are used in suicides in Maryland, which may be a reflection of the types of firearms most accessible to the decedents. Although handguns are used most often, a study of Maryland firearm suicides between 2003 and 2018 found that 28% involved long guns. Paul S. Nestadt et al., *Prevalence of Long Gun Use in Maryland Firearm Suicides*, Injury Epidemiology, at 1 (February 3, 2020). The study found that the use of long guns in suicide was more prevalent among young and rural populations. *Id*. Eighty percent of rural youth suicides used long guns which, the study authors suggest, may "reflect long guns being harder to hide and more expensive to lock away from children." *Id*. at 7. To address those most at risk of suicide by long guns, interventions "may include safe storage

---

[2] Available at https://health.maryland.gov/phpa/OEHFP/Injury/Pages/mvdrs.aspx.

4

pamphlets and suicide crisis resource brochures at hunting stores and firing ranges" among other locations. *Id.* at 8.

Evidence suggests that the suicide problem may have gotten worse in recent years, due in part to the COVID-19 pandemic. In September 2022, the Centers for Disease Control and Prevention's National Center for Health Statistics reported provisional suicide statistics in the United States for 2021. Sally C. Curtin et al., National Vital Statistics System, Centers for Disease Control and Prevention, *Provisional Numbers and Rates of Suicide by Month and Demographic Characteristics: United States, 2021* (September 2022).[3] The report found a four percent increase in the national suicide rate from 2020 to 2021. This followed declining suicide rates in 2019 and 2020. Statistics for 2022 are not yet available.

Evidence indicates that the suicide rate for youths in the United States is also increasing, and that the increase may be connected to access to unsecured firearms. A study published in March 2023 found that during the first ten months of the pandemic, March 2020 through December 2020, suicides among youth increased over expected rates based on pre-pandemic trends. Jeffrey A. Bridge et al., *Youth Suicide During the First Year of the COVID-19 Pandemic*, Pediatrics (March 1, 2023).[4] The study found that youth suicides by firearm were significantly higher

---

[3] Available at https://www.cdc.gov/nchs/data/vsrr/vsrr024.pdf

[4] Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10227859/

5

than expected across all demographic subgroups examined. In contrast, suicides by hanging were more in line with expectations. The study authors speculated that the increase in suicide by firearm could have resulted from more time at home and a corresponding increase in "exposure to unsecured firearms." *Id*. at 11. They noted that increase in youth suicide by firearms "underscores the importance of lethal means restriction interventions including educational programs, youth-focused firearm laws, and safe firearm storage public awareness campaigns." *Id*. at 12.

Although the suicide data provides a sobering look at the extent and nature of the problem, it also offers insights about the best ways to design prevention programs.

## II. THE ORDINANCE ENACTED BY ANNE ARUNDEL COUNTY FALLS WITHIN THE BROAD AUTHORITY OF STATE AND LOCAL GOVERNMENTS TO PROTECT THE HEALTH AND SAFETY OF THEIR RESIDENTS.

The State of Maryland has broad powers to protect the wellbeing of those within its borders and preventing suicide is a crucial exercise of that authority. Health and safety of citizens is "primarily, and historically" an issue of "local concern" and "States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (citations omitted). More specifically, the United States Supreme Court has recognized that States have an "interest in preventing suicide, and in studying, identifying, and treating its

causes." *Washington v. Glucksburg*, 521 U.S. 702, 730 (1997); *see also Tyler v. Hillsdale County Sheriff's Office*, 837 F.3d 678, 693 (6th Cir. 2016) (stating that government interest in preventing suicide is "not only legitimate," it is "compelling").

As the State of Maryland has a clear interest in preventing suicide and the broad authority to pass legislation to that effect, so too does Anne Arundel County. Maryland state law vests Anne Arundel County with authority to enact laws to protect the health and welfare of its citizens. Article XI-A of the Maryland Constitution allows counties to acquire legislative home rule through adoption of a county charter. Section 2 of Article XI-A requires the Maryland Legislature to "provide a grant of express powers" to such charter counties, and the Legislature did so through the Express Powers Act. Md. Code Ann., Local Gov't §§ 10-101 – 10-330 (LexisNexis 2013). Among the powers granted is the authority to enact laws that "aid in maintaining the peace, good government, health, and welfare of the county." Local Gov't § 10-206(a)(2). The Supreme Court of Maryland construes that provision to "to afford wide discretion to charter counties in the good faith exercise of their police powers in the public interest." *Eastern Diversified Props., Inc. v. Montgomery County*, 319 Md. 45, 51 (1990).

The ordinance at issue in this case directly promotes the health and safety of citizens by spreading awareness of suicide and the associated risk factors. It focuses

7

on getting factual information into the hands of individuals purchasing firearms or ammunition, and applies only at the point of sale. The connection between access to firearms and suicide is indisputably shown by the data. Firearms are the leading method of suicide in Maryland and nationally. As a result, Anne Arundel County's ordinance is a logical and tailored approach to spreading awareness in an effort to prevent suicides. Meanwhile, the ordinance does not require sellers of firearms or ammunition to say anything controversial or to endorse any information or message. Nor does it impose any burden whatsoever on the sale, purchase, use, or possession of firearms or ammunition.

The ordinance is a prime example of a charter county in Maryland exercising its granted power to pass legislation that addresses a serious issue of public concern. It also shows how local elected officials can experiment with new policy solutions to problems that may sometimes seem intractable. And it shows the ability for State and local governments to work in tandem to save lives by instituting a range of policies and initiatives to prevent suicides in their communities.

### III.    ANNE ARUNDEL COUNTY'S FOCUSED REQUIREMENT OF DISCLOSURE OF SUICIDE AWARENESS INFORMATION AT THE POINT OF SALE OF FIREARMS ALIGNS WITH CAREFULLY TAILORED MARYLAND STATE LAWS DESIGNED TO PREVENT FIREARM-RELATED SUICIDES.

Like Anne Arundel County, the State of Maryland takes seriously the problem of suicide and has made proactive efforts toward prevention. Unfortunately, because many factors can contribute to suicides and all different types of people from all

8

backgrounds can be impacted, no single policy or program will solve the problem. Rather, a wide range of prevention efforts is needed.

Since firearms are the leading method of suicide, increasing awareness of the relationship between firearms and suicide is an important strategy. The Anne Arundel County ordinance is one useful, focused approach. The State of Maryland has also enacted numerous laws to prevent firearm related suicides.

*Extreme Risk Protective Orders*: In 2018, the Maryland Legislature passed, and Governor Larry Hogan signed, House Bill 1302, which allows courts to issue an extreme risk protective order that prohibits an individual from possessing a firearm if the individual "poses a danger of causing personal injury to" themself or others "by possessing a firearm." Md. Code Ann., Pub. Safety § 5-605(c)(1)(ii) (LexisNexis 2022). Maryland law already allowed for peace and protective orders to prevent individuals from harming others. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3-1501 – 13-510 (LexisNexis 2020); Md. Code Ann., Fam. Law §§ 4-504 – 4-512.1 (LexisNexis 2019). Extreme risk protective orders, however, enable petitioners and courts to intervene to prevent individuals from harming themselves through the use of firearms.

*Veteran Suicide Prevention – Comprehensive Action Plan*: In 2019, the Maryland Legislature unanimously passed Senate Bill 521, now codified at Md. Code Ann., Health-Gen § 13-3901 (LexisNexis 2019), which requires the Maryland

9

Department of Health to develop a comprehensive action plan to prevent suicide among military veterans. The Department's resulting plan identifies four critical priorities areas, one of which is to "[i]ncrease lethal means safety and safety planning." Maryland Department of Health letter to Governor Hogan, et al., regarding action plan under S.B. 521, at 2 (March 25, 2022).[5] In describing that priority, the plan notes that firearms are the leading method of suicide for service members and veterans and recommends training clinical and medical providers on ways to "address hesitancy [by service members, veterans, and their families] in using safety planning and lethal means safety tools." *Id*. at 5.

*Jaelynn's Law*: Under current Maryland law, storing a loaded firearm in a place where one knows or should know that an unsupervised child under the age of 16 has access to it is a misdemeanor punishable by a fine not exceeding $1,000. Md. Code Ann., Crim. Law § 4-104(c)-(d) (LexisNexis 2021). A violation may not be evidence of negligence, limit liability of a party or insurer, or be referenced in a civil trial for property damage, injury, or death. Crim. Law § 4-104(e) (LexisNexis 2021). During this year's legislative session, the Maryland legislature passed, and Governor Wes Moore signed, Senate Bill 858, known as "Jaelynn's Law," which broadens that prohibition by (1) making it applicable to access by children under the age of 18

---

[5] Available at https://dlslibrary.state.md.us/publications/Exec/MDH/SB521Ch35(2)(2019)_2022.pdf

10

instead of under 16, and (2) including access to *unloaded* firearms instead of just loaded ones. The bill also removes the existing restriction against a violation being evidence of negligence, limiting liability of a party or insurer, or being referenced in a civil trial. In addition, the bill calls for the Maryland Department of Health to develop and distribute a youth suicide prevention and firearms safe storage guide that provides information about unsafe storage of firearms and the connection to youth suicide. The bill is named for Jaelynn Willey, a 16-year-old who was killed in her high school in southern Maryland in 2018 by a 17-year-old classmate who used his father's gun. Matt Bush, *Jaelynn's Law Passes Maryland Senate, Tightening Requirements About Gun Storage*, WYPR (March 15, 2023).[6] The bill takes effect on October 1, 2023.

*Expanded Handgun Permit Training*: A permit is required to carry, wear, or transport a handgun in Maryland. Pub. Safety § 5-303 (LexisNexis 2022). Among the qualifications for a permit is completion of a firearms training course that includes classroom instruction on state firearms law, firearms safety, and handgun operation. Pub. Safety § 5-306(a)(5)(ii) (LexisNexis 2022). Earlier this year, the Maryland Legislature passed, and Governor Moore signed, House Bill 824, which

---

[6] Available at https://www.wypr.org/wypr-news/2023-03-15/jaelynns-law-passes-maryland-senate-tightening-requirements-about-gun-storage

11

requires that the classroom instruction also cover conflict de-escalation and resolution, anger management, and suicide prevention.

\* \* \* \* \*

These efforts by the State of Maryland show a deep commitment to preventing suicide by taking tangible, tailored steps to increase awareness of suicide and associated risk factors, and to limit access to firearms by those at risk of firearm suicide including veterans and children. They approach the suicide problem from different angles and empower family and community members to recognize warning signs and to intervene when appropriate.

Importantly, the Centers for Disease Control and Prevention note that different suicide prevention programs "can have complementary and synergistic impacts." National Center for Injury Prevention and Control, Centers for Disease Control and Prevention, *Suicide Prevention Resource for Action: A Compilation of the Best Available Evidence*, at 17 (2022).[7] Accordingly, the various suicide prevention efforts by the State of Maryland benefit from additional prevention programs by local governments and community groups. The State of Maryland welcomes these local and community interventions, including Anne Arundel

---

[7] Available at https://www.cdc.gov/suicide/pdf/preventionresource.pdf.

12

County's policy to increase, at the point of sale of firearms, awareness of suicide and of available resources.

Suicide is itself a tragedy, but even more so because it is often preventable if risk factors can be identified and adequately addressed. The State of Maryland has a critical interest in preventing suicide and works to create a strong network of prevention programs. It embraces intervention efforts from local governments. Here, Anne Arundel County implemented a focused plan to increase awareness about suicide by getting factual information to firearms purchasers. Since firearms are the leading method of suicide in Maryland, this is an entirely reasonably approach. But rather than recognize the value in educating firearm owners about suicide risk factors and available prevention resources, the petitioners seek to limit the ability of local elected leaders to prevent suicides in their communities. As the district court correctly concluded, however, the ordinance is closely linked to the County's interest in preventing suicide and it does not violate the First Amendment rights of the petitioners.

## CONCLUSION

The judgment of the district court should be affirmed.

        Respectfully submitted,

        ANTHONY G. BROWN
        Attorney General of Maryland

        /s/ Robert A. Scott
        _____

        ROBERT A. SCOTT
        RYAN R. DIETRICH
        Assistant Attorneys General
        200 Saint Paul Place, 20th Floor
        Baltimore, Maryland 21202
        rscott@oag.state.md.us
        (410) 576-7055
        (410) 576-6955 (facsimile)

        Attorneys for the State of Maryland

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 2883 words, excluding the parts of the brief exempted by Rule 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

        /s/ Robert A. Scott
        _____
        Robert A. Scott

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| | * | |
| MARYLAND SHALL ISSUE, INC., et al., | * | |
| *Petitioners*, | * | No. 23-1351 |
| v. | * | |
| ANNE ARUNDEL COUNTY, MARYLAND, | * | |
| *Respondent*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CERTIFICATE OF SERVICE**

I certify that, on this 17th day of July, 2023, the Amicus Curiae Brief of the State of Maryland was filed electronically and served on counsel of record who are registered CM/ECF users.

/s/ Robert A. Scott
_____
Robert A. Scott