**No. 23-1351**

In the
United States Court of Appeals
for the Fourth Circuit

**MARYLAND SHALL ISSUE, *et al.*,**
*Plaintiffs-Appellants*

v.

**ANNE ARUNDEL COUNTY, MARYLAND, *et al.*,**
*Defendant-Appellee*

On Appeal from the United States District Court
for the District of Maryland

**REPLY OF APPELLANTS**

MARK W. PENNAK
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd., Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ...................................................................... ii

ARGUMENT ............................................................................................ 1

  I.  THIS CASE IS CONTROLLED BY *NIFLA*, NOT *ZAUDERER* ................. 1

    A. *Zauderer* Does Not Apply ........................................................... 1

    B. The Ordinance Is Not A Health And Safety Warning ............................... 10

    C. The Literature Is Not Purely Factual and Uncontroversial ......................... 13

      1.  The literature is not "purely factual" .................................. 13

      2. The literature is not "uncontroversial" .................................... 19

  III.  THE EXCLUSION OF PROF. KLECK'S EXPERT REPORT AND TESTIMONY WAS ERROR .................................................................... 24

  IV. THE DISTRICT COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT FOR PLAINTIFFS ................................................................ 27

CONCLUSION ......................................................................................... 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis*, 143 S.Ct. 2298 (2023 .............................. 4,9, 10,16,23

*44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484 (1996). ...................................12

*Bresler v. Wilmington Trust Co.*, 855 F.3d 178 (4th Cir. 2017).............................26

*Brown v. Entertainment Merchants Ass'n,* 564 U.S. 786 (2011 ..................... *passim*

*Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018).....................................................9

*California Chamber of Commerce v. Council for Education and Research on Toxics*, 29 F.4th 468 (9th Cir. 2022), *cert. denied,* 143 S.Ct. 1749 (2023).........17

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). ....................................................................... *passim*

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)................................................3

*CTIA - The Wireless Association v. City of Berkeley, California*, 928 F.3d 832 (2019)........................................................................... 5, 19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) ..................26

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997), .............................................25

*Google LLC v. Oracle America, Inc.*, 141 S.Ct. 1183 (2021). ...............................25

*Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council Of Baltimore,* 721 F.3d 264 (4th Cir. 2013)...........................................3

*Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council Of Baltimore*, 879 F.3d 101 (4th Cir.), *cert. denied*, 138 S.Ct. 2710 (2018) .......................................................... 7,16,21

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 575 (1995),....................................................................... 2,3,20,23

ii

*In re Lipitor,* 892 F.3d 624 (4th Cir. 2018)........................................................ 25,26

*Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879 (9th Cir. 2018),
   *cert. denied,* 139 S.Ct. 2767 (2019)....................................................21

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010); ...........3,6

*Moody v. Netchoice, LLC*, Nos. 22-277, filed Sept. 21, 2022 ...................................7

*Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518 (D.C. Cir. 2015) .....................................3

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) .......... *passim*

*National Ass'n. of Wheat Growers v. Becerra*,
   468 F.Supp. 3d 1247 (E.D. Cal. 2020) .............................................................19

*Netchoice, LLC v. Paxton*, No. 22-555, filed Dec. 15, 2022 ...................................7

*Netchoice LLC v. Moody*, No. 22-393, filed Oct. 24, 2022,.....................................7

*NetChoice, LLC v. Attorney General, Florida,* 34 F.4th 1196 (11th Cir. 2022).......6

*NYSRPA v. Bruen*, 142 S.Ct. 2111 (2022). .............................................................16

*Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019). ...............................4

*Planned Parenthood Minnesota v. Rounds*,
   686 F.3d 889 (8th Cir. 2012). ...........................................................................16

*Recht v. Morrisey*, 32 F.4th 398 (4th Cir. 2022)............................................. *passim*

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988) ................ 9, 16

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995), .................................................12

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
   547 U. S. 47 (2006),..............................................................................................4

*Simmons v. Himmelreich*, 578 U.S. 621 (2016......................................................11

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011). .....................................................15

*Stuart v. Camnitz*, 774 F.3d 238 (4th Cir. 2014) ...................................................23

*Telescope Media Group v. Lucero*, 937 F.3d 740 (8th Cir. 2019) ..........................21

*United States v. Hillary*, 106 F3d 1170 (4th Cir. 1997) ...........................................11

*United States v. Lopez,* 913 F.3d 807 (9th Cir. 2019) ...............................................18

*United States v. Moreland*, 437 F. 3d 424 (4th Cir. 2006), ......................................26

*United States v. Philip Morris*, 855 F.3d 321 (D.C. Cir. 2017)...............................12

*United States v. United Foods*, 533 U.S. 405 (2001), ............................................3,6

*United States v. Valencia*, 600 F.3d 389 (5th Cir.),
   *cert. denied*, 562 U.S. 893 (2010)........................................................................14

*Westberry v. Gislaved Gummi AB,* 178 F.3d 257 (4th Cir. 1999). .........................26

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio,*
   471 U.S. 626, 628 (1985),.......................................................................... *passim*

## Statutes

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355 .......................................11

## ARGUMENT

## I.    THIS CASE IS CONTROLLED BY *NIFLA*, NOT *ZAUDERER*

### A.    *Zauderer* Does Not Apply

The defendant-appellee, Anne Arundel County ("the County") and its numerous amici inhabit a world where the First Amendment and an express holding of the Supreme Court in *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*"), may be disregarded because they believe there are good policy reasons for an ordinance that coerces licensed dealers to display and distribute the County's literature. The County does not dispute that such display and distribution requirements compel "speech." Nor does the County dispute that the forced display and distribution of these pamphlets is content-based and is thus presumptively unconstitutional under the First Amendment. The district court so held, and the County endorses that decision. The burden is on the *County* to justify its compelled speech.

The County (and its amici)[1] are of the view that all the County needs is a commercial "context" and then, like magic, the County is permitted to rely on any "rational basis" it may have to compel the speech of a retailer, regardless of whether the retailer is otherwise engaged in speech and regardless of whether the

---

[1] For the reasons detailed in plaintiffs' opposition to certain amici, filed July 24, 2024 (Dkt. # 46), plaintiffs object to any amicus filing that raises arguments or issues that go beyond those raised by the parties.

compelled speech has any relationship to any speech otherwise undertaken by the retailer. The County asserts that such compelled speech is allowed by *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio,* 471 U.S. 626, 628 (1985), and, regrettably, the district court agreed. That was error.

*NIFLA* holds that *Zauderer* is "*limited* to 'purely factual and uncontroversial information *about the terms under which ... services will be available.*'" *NIFLA*, 138 S.Ct. at 2372, quoting *Zauderer*, 471 U.S. at 651 (emphasis added). In the very next sentence, the Court relied on *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 575 (1995), as "explaining that *Zauderer does not apply outside of these circumstances*." Id. (emphasis added). Those twin statements could hardly be clearer. The County's literature does not remotely purport to regulate "the terms under which services will be available" and the County does not assert otherwise.

The County never comes to grips with these limitations on *Zauderer*. But ignoring the limits imposed on *Zauderer* by *NIFLA* does not make those limits go away. If the County's reasons are truly so compelling, then the County may justify its compelled speech under strict scrutiny. It has made no attempt to do so undoubtedly because it understands that it has ample alternative ways to advance the County's policies without imposing compelled speech and thus cannot satisfy the rigorous analysis strict scrutiny demands. *Greater Baltimore Center for*

2

*Pregnancy Concerns, Inc. v. Mayor and City Council Of Baltimore,* 721 F.3d 264, 279 (4th Cir. 2013).

Controlling precedent makes clear that *Zauderer* is limited to (1) "voluntary," *United States v. United Foods*, 533 U.S. 405, 416 (2001); (2) and "inherently misleading," *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250 (2010); (3) "commercial advertising" relating to the "terms of service." *NIFLA*, 138 S.Ct. at 2372, quoting *Zauderer*, 471 U.S. at 651. As the D.C. Circuit has stated, "the Supreme Court has refused to apply *Zauderer* when the case before it did not involve voluntary commercial advertising." *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 523 (D.C. Cir. 2015) ("*NAM*"), citing *Hurley*, 515 U.S. at 573. This point was stressed in *Recht v. Morrisey*, 32 F.4th 398, 416-17 (4th Cir. 2022), where this Court stated that "the Supreme Court cautioned against applying *Zauderer* to disclosures that 'in no way relate[]' *to the services being offered* or that compel speech on hotly contested topics." Quoting *NIFLA*, 138 S.Ct. at 2372 (emphasis added).

These limitations on *Zauderer* are not happenstance. The "rational basis" test touted by the County is the lowest standard of review, and one that is universally applicable to *any* statute or ordinance under the Due Process Clause of the Fifth and Fourteenth Amendments. See, e.g., *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). *Zauderer* is premised on the notion that the government

may compel speech relating to "the terms of service" so as to prevent the commercial entity from misleading or deceiving the public. That rationale cannot possibly apply if the commercial entity is not **otherwise engaged** in speech sought to be regulated. If the commercial entity is not engaged in such speech, then the government may not compel the entity to speak the government's message. Full stop.

Nothing in *Zauderer* remotely allows a government to compel the speech of a person who merely desires **to remain silent** on the subject matter, like the dealers in this case. As the Supreme Court recently stated, "our 'leading First Amendment precedents…have established the principle that freedom of speech prohibits the government from telling people what they must say.'" *303 Creative LLC v. Elenis*, 143 S.Ct. 2298, 2317 (2023), quoting *Rumsfeld v. Forum for Academic & Institutional Rights, Inc*., 547 U. S. 47, 61-62 (2006), and citing *NIFLA,* 138 S.Ct. at 2371. See also *Janus v. AFSCME*, 138 S.Ct. 2448 (2018); *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 222 (4th Cir. 2019). Tellingly, the County's brief never even mentions the right "not to speak."

*NIFLA* restricts *Zauderer* by stressing that it is limited to compelled speech on the "terms of service." That limitation presupposes that the regulated entity is otherwise speaking about its "terms of services" whether that be in advertising or otherwise. Thus, in *Recht*, decided after *NIFLA*, this Court held that the purpose of

*Zauderer* was to prevent consumer deception "by providing information *directly connected to the subject of the advertisement*, rather than by compelling speech concerning unrelated or competing services." 32 F.4th at 417 (emphasis added). It is undisputed that the County's literature does not "provide information directly connected" to any "advertising" conducted by the plaintiff dealers. Again, the dealers merely desire "not to speak."

The County nonetheless asserts that its ordinance is "similar" to *Recht* because it "relates directly to the *products* Plaintiffs sell," Co.Br. 27, and further argues that the compelled speech is permissible because the pamphlets "relate to the safe use of guns and ammunition." (Co.Br. 26). That "similarity" does not exist. As the County admits, *Recht* sustained compelled speech "because the disclosure related directly to the risks associated with the *advertisements'* reference to medications." Id. at 27 (emphasis added). In other words, the required disclosures at issue in *Recht* related to the commercial entity's voluntary *speech* (the "advertisements"). *Recht* never held that the government could compel speech about products in the total absence of any speech by the commercial entity.

The County argues that *NIFLA's* language withstanding, *Zauderer* is not limited to services, but also may include compelled speech about *products*, citing the holding in *CTIA - The Wireless Association v. City of Berkeley, California,* 928 F.3d 832, 848 (2019), to that effect. Co.Br. 25. *CTIA* likewise held that "the

*Zauderer* exception for compelled speech applies even in circumstances where the disclosure does not protect against deceptive speech." Id. at 843. These holdings arguably disregard *NIFLA* and thus go too far. As stated in *Recht*, "the Supreme Court cautioned against applying *Zauderer* to disclosures that 'in no way relate[]' to the services being offered." 32 F.4th at 416-17. See also *NAM*, 800 F.3d at 822 ("the Supreme Court's opinion in *Zauderer* is confined to advertising, emphatically and, one may infer, intentionally").

But this Court need not resolve whether *Zauderer* extends to speech about products or non-deceptive speech because the compelled speech must still relate to *speech* in which the regulated entity *is otherwise voluntarily engaged*. The Supreme Court made that clear in *United States v. United Foods*, 533 U.S. 405, 416 (2001), where it noted that the compelled speech in *Zauderer* applied to a "rule requiring that attorneys who advertised by their own choice" and thus involved "voluntary advertisements." See also *Milavetz,* 559 U.S. at 250 ("required disclosures are intended to combat the problem of inherently misleading commercial advertisements"); *NetChoice, LLC v. Attorney General, Florida,* 34 F.4th 1196, 1226 (11th Cir. 2022) (noting that the compelled disclosures "provide users with helpful information that prevents them from being misled about

6

platforms' policies" otherwise published by the platforms). Nothing in *CTIA* holds to the contrary.[2]

Here, the County does not dispute that its literature is utterly "unrelated" to any *speech* (commercial or otherwise) otherwise undertaken by the plaintiff dealers. Under *Recht*, where the dealers do not engage in speech, they may not be compelled to surrender their First Amendment right "not to speak" merely because the County wants to commandeer them to deliver its message. *Recht* likewise makes clear that compelled speech is **not** permissible if the compelled *speech* concerns "unrelated or competing services." The County's speech (the pamphlets) is all about combating suicide and publicizing the "services" offered by the County and others. It is undisputed that these services are wholly "unrelated" to the services offered by the dealers.

Purporting to rely on *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council Of Baltimore*, 879 F.3d 101, 108 (4th Cir.), *cert. denied*, 138 S.Ct. 2710 (2018), the County accurately recites the considerations for determining whether the "speech" is "commercial," including whether there is an "economic motivation" for the speech or whether the speech is an "advertisement." But then, in a *non sequitur,* the County jumps to the conclusion that the literature is

---

[2] The scope of *Zauderer* is presented in the petition for certiorari and cross-petition filed in *Moody v. Netchoice, LLC*, Nos. 22-277, filed Sept. 21, 2022, and *Netchoice LLC v. Moody*, No. 22-393, filed Oct. 24, 2022, and in *Netchoice, LLC v. Paxton*, No. 22-555, filed Dec. 15, 2022.

commercial speech because the ordinance applies only to "*establishments* that *sell* guns or ammunition" and to "*retailers* who 'propose a commercial transaction.'" Co. Br. at 20-21 (emphasis added). Yet, the required focus is on the *speech* being compelled, not whether or where a product is sold. The compelled speech is the pamphlets. That County does not argue (nor can it) that plaintiffs have any "economic motivation" for displaying and distributing the County's pamphlets. The pamphlets are not an "advertisement" and nothing in the County's literature "proposes a commercial transaction." The pamphlets are simply not commercial speech.

Indeed, the County's assertion that this case involves only "commercial speech" conflicts with *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). "Commercial speech" under *Central Hudson* means an "'*expression* related *solely* to the economic interests of the speaker and its audience.'" *Recht*, 32 F.4th at 407, quoting *Central Hudson*, 447 U.S. at 561 (emphasis added). That test focuses on the "expression" (the pamphlets here) not merely the speaker and not even the County asserts that its "expression" relates "solely to the economic interests of the speaker and its audience." The literature is not "commercial speech" under *Central Hudson*, and it is not commercial speech under *Zauderer*. Plaintiffs pointed this out in their opening brief (Br. of Appellants at 29), but the County's only response is the same sleight of hand, *viz.,* that speech

8

is commercial if it is in "a commercial context," regardless of its content. That is just wrong.

The County attempts to distinguish *Recht* and *Central Hudson* by suggesting that compelled speech is less protected than restrictions on speech (Co.Br. 19), but that is likewise incorrect. *Zauderer* allows compelled speech only within the very narrow limits outlined above. *Central Hudson* applies an intermediate scrutiny standard to *restrictions* on purely commercial speech. Neither circumstance is present here. See *303 Creative*, 143 S.Ct. at 2312 ("Nor does it matter whether the government seeks to compel a person to speak its message when he would prefer to remain silent or to force an individual to include other ideas with his own speech that he would prefer not to include."); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797-98 (1988) ("There is certainly some difference between compelled speech and compelled silence, but in the context of protected speech, the difference is without constitutional significance, for the First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what not to say."); *Burns v. Martuscello*, 890 F.3d 77, 84 & n.3 (2d Cir. 2018) (compelled speech "is a severe intrusion on the liberty and intellectual privacy of the individual."). The County may not evade strict scrutiny.

Finally, the County's argument that a "commercial context" is all that matters is rife with the potential for abuse of the First Amendment. For example,

*303 Creative* would have come out the other way under the County's test, as there the State-imposed speech on the web designer's services occurred in a "commercial context" and there was no doubt that the State had a strong policy interest at stake. Indeed, in *303 Creative* the State imposed speech on the web designer "[i]f she wishes to speak," 143 S.Ct. at 2313, while here, the County's ordinance forces the dealers to display and distribute the County's message *regardless* of whether they speak and is thus even *more* extreme. The County does not address, much less refute, the potential abuses detailed in the plaintiffs' opening brief. (Br. of Appellants. at 35-36). The doctrinal implications of the County's position in its effect on the First Amendment are Orwellian.

### B.    The Ordinance Is Not A Health And Safety Warning

The County barely mentions plaintiffs' argument concerning the limits *NIFLA* places on *Zauderer*. Co. Br. at 23. Rather, the Court skips over *NIFLA* to argue that the County's pamphlets are merely health and safety warnings of the type *NIFLA* stated were "permissible," *NIFLA*, 138 S.Ct. at 2376. Indeed, much of the County's brief turns on this one sentence in *NIFLA*, asserting apoplectically that a ruling for plaintiffs would call into question "scores" of labeling requirements and health and safety product warnings. That is utter nonsense. Nothing in that one sentence negates the Court's express holding that *Zauderer* is limited to compelled disclosures about the "terms of services."

10

There is no need to decide hypothetical cases that are not before the Court. The County's pamphlets are not product "labels" or health and safety "warnings" any more than the compelled speech was in *NIFLA*. Thus, this Court need only hold that this case, like *NIFLA*, does not involve such items. See *Simmons v. Himmelreich*, 578 U.S. 621, 629 (2016) (Court would address the government's parade of horribles "in the appropriate case"); *United States v. Hillary*, 106 F3d 1170, 1173 (4th Cir. 1997) ("[t]he short answer to this short parade of horribles is that we decide cases one at a time.").

In any event, the County's literature is not remotely analogous to product warnings or labels of the type referenced in *NIFLA*. For example, Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355, imposes on drug manufacturers an elaborate regulatory scheme for development and marketing of new drugs, including labeling requirements. The drug manufacturer must "propose" a "label" and ensure that the label is not "false or misleading." 21 U.S.C. § 355(a),(d). These requirements do not impose any message created by the government or compel speech about services provided by the government.

Nor would allowing the dealers to exercise their right not to speak "call into question warning labels" for "cigarettes" and "alcohol." Co.Br. 47. The County's literature concerning suicide, conflict resolution and County services does not address the normal legal use of a product, like smoking cigarettes or drinking

11

alcohol. Unlike the County's literature here, nothing on those product labels purports to advise consumers of government services. The manuals provided by firearms manufacturers with each sale might be remotely analogous to labels. But those manuals already contain safety warnings, including warnings on safe storage. See, e.g., https://www.sigsauer.com/owners-manuals. The pamphlets are not product manuals.

Moreover, government-mandated labels on cigarette packaging are a *remedy* and designed to alleviate consumer confusion and harm created by many years of deceptive advertising by the industry. See, e.g., *United States v. Philip Morris*, 855 F.3d 321, 328 (D.C. Cir. 2017) (applying *Zauderer* to corrective statements designed to "thwart" the ability to "mislead" or "capitalize" on "prior deceptions"). No such facts are present here. And there is nothing about labeling or warnings that insulates such matters from First Amendment limits. In *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 485 (1995), for example, the Supreme Court struck down a federal law that restricted commercial speech (alcohol content) on labels under *Central Hudson*, even though the Court fully acknowledged the strong government interest there presented. See also *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 489 (1996). Here, the County wants to compel speech that is **non**-commercial under the *Central Hudson* and seeks to evade *any* heightened scrutiny.

### C.  The Literature Is Not Purely Factual and Uncontroversial

### 1.  The literature is not "purely factual"

For all the reasons set forth in plaintiffs' opening brief (at 36-42), the suicide pamphlet is not "purely factual." That pamphlet directly asserts that "People are More at Risk for Suicide" if they have mere "access" to "firearms" and, on the same page, affirmatively states that such "access" **is** a "characteristic or condition" (a risk factor) that "increase[s] the chance that a person may try to take their life." JA0028. Thus, the accessibility of a firearm is a "condition" that somehow makes a person want to "try" suicide. At the least, these statements, taken together, imply that mere access to a firearm is a causal factor for suicide attempts.

The County argues that "the pamphlet does not state that guns cause suicide." Co.Br. 32. But the County's denial merely parrots the flawed, *ipse dixit* approach followed by the district court and addressed in plaintiffs' opening brief. Br. of Appellants at 37-39. When the County gets around to the actual language used by the pamphlet, it asserts that "[o]f course, the pamphlet states that risk factors in fact make a person more at risk for suicide, but that does not mean the pamphlet asserts causation." Co.Br. 33. The County's semantic gymnastics would make Humpty Dumpty proud, see Br. of Appellants at 48 n.3, but the County

13

cannot have it both ways. If a risk factor "**in fact, makes**" a person more likely to try suicide, then "of course" that assertion is, "in fact," making a causal connection between the suicide attempt and the factor that "made" the attempt more likely.

The district court ruled, and the County concedes (Co.Br. 14) that the ordinance is supported only by a "correlation" but if so, that necessarily means that the pamphlet cannot be "purely factual" within the meaning of *Zauderer*. To hold otherwise would be to give governments free rein to use junk science showing only correlation to compel speech. Correlation speech cannot be "purely factual" under *Zauderer* because "[e]vidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence." *United States v. Valencia*, 600 F.3d 389, 425 (5th Cir.), *cert. denied*, 562 U.S. 893 (2010). Thus, the Supreme Court held in *Brown v. Entertainment Merchants Ass'n,* 564 U.S. 786, 800 (2011), that reliance on correlation evidence is impermissible in the First Amendment context.

In response, the County does not dispute that correlation evidence is often misused to imply causation. Nor does the County address, much less dispute, Prof. Kleck's point that using correlation to imply causation is "junk science." See JA0278-JA0279. Rather, the County argues that *Brown*'s dismissal of correlation evidence is inapplicable because *Brown* applied strict scrutiny to strike down

14

labeling requirements for violent video games. Co.Br. 36. But that argument obviously begs the question of whether strict scrutiny is applicable here.

*Brown* refutes the County's assertion that governments are free to compel speech merely because it merely occurs in a "commercial context." The *Brown* Court did not apply (or even cite) *Zauderer* or *Central Hudson* even though the California statute placed restrictions on and compelled labeling requirements for the sale or rental of violent video games. By any measure, that is a "commercial context," but that "context" did not matter to the result in *Brown*. The County argues that *Brown* supports the government's use of "predictive judgments." Id. But that reference was for "content-neutral regulation" which was absent in *Brown* and is likewise absent in this case. 564 U.S. at 800. *Zauderer* and *Central Hudson* were not addressed in *Brown* because the restrictions and labeling requirements there at issue were not "commercial speech," *viz*., they did not relate "solely to the economic interests of the speaker and its audience.'" *Recht*, 32 F.4th at 407. *Brown* compels strict scrutiny here and under strict scrutiny the County loses.

But even assuming *arguendo* that the pamphlets are somehow viewed as commercial speech, the government still "may not" regulate such speech so as to "burden the speech of others in order to tilt public debate in a preferred direction." *Sorrell v. IMS Health Inc*., 564 U.S. 552, 578-79 (2011). Here, the County has commanded firearms dealers to push its message in disregard of the dealers' right

"not to speak" and thus uses coercive government power to "tilt the debate" in the dealers' own shops. See *NAM*, 800 F.3d at 530 (noting "the government's ability to skew public debate by forcing companies to use the government's preferred language"); *Greater Baltimore Center*, 879 F.3d at 111 ("states can bend individuals to their own beliefs and use compelled speech as a weapon to run its ideological foes into the ground").

The County also argues (Co.Br. 35) that correlation is good enough because it need show only a "reasonable fit between means and ends," relying on the intermediate scrutiny "balancing test" that was applicable to Second Amendment cases prior to being abrogated by *NYSRPA v. Bruen*, 142 S.Ct. 2111, 2127 (2022). Yet, the County won below under *Zauderer*'s rational basis test, and does not argue that result can be affirmed under a now-abrogated intermediate scrutiny test. And for good reason. As *Recht* holds, the *Central Hudson* intermediate scrutiny inquiry is applicable to restrictions on commercial speech, not to compelled speech, and, in any event, the pamphlets are not commercial speech under the test articulated in *Central Hudson*. Outside the narrow confines of *Zauderer*, *Brown*, *303 Creative, Riley* and other Supreme Court precedent make clear that strict scrutiny applies to content-based compelled speech.

Undaunted, the County relies on the discussion of causation in *Planned Parenthood Minnesota v. Rounds*, 686 F.3d 889, 894 (8th Cir. 2012). Co.Br. 34.

But *Rounds* was a pre-*Dobbs* abortion rights case, not a First Amendment case, and thus the issue in *Rounds* was whether there was evidence that the State statute at issue imposed an "undue burden" on abortion rights. Id. *Zauderer,* in contrast, requires that the statement be "purely factual," and *Brown* makes clear that correlation evidence is not good enough under the First Amendment. Under *NIFLA* and *Recht*, the government must show the elements of *Zauderer* without deference to the government's views or the underlying policy considerations. 32 F.4th at 417.

The County cannot dispute that to be "**purely** factual" under *Zauderer* the statement must be beyond reasonable dispute; a statement that is literally "true," *Recht*, 32 F.4th at 418, without being misleading or open to varying interpretations by "a reasonable person." *California Chamber of Commerce v. Council for Education and Research on Toxics*, 29 F.4th 468, 479 (9th Cir. 2022), *cert. denied,* 143 S.Ct. 1749 (2023) (assessing this "purely factual" question from the perspective of what "[a] reasonable person might think"). Here, a reasonable person would think that the pamphlet is making or implying a causal connection. The pamphlet thus is not "purely factual." See Brief of Appellants at 37.

In fact, as Prof. Kleck testified, people with access to firearms are **not** "more at risk for suicide" because other factors ("confounders") explain the correlation. See JA0287, JA0302, JA0306-JA0309, JA0359-JA0360, JA0466-JA0469. Prof. Kleck thus states that "the net effect of gun ownership rates on both homicide rates

17

and suicide rates is essentially zero, or indistinguishable from zero." JA0380. In his expert opinion, "gun access is not equated with gun violence," JA0381, and "firearms prevalence rates" do not "affect the total suicide rate." JA0287. See also JA0343 ("I draw the conclusion that now it's more likely there's no significant effect gun access on suicide."); JA0466 ("It is my expert opinion that the suicide claim is not supported by the most credible available scientific evidence and is probably false"); JA0466-JA0467 ("The suicide claim is contradicted by much of the available scientific evidence, and is indisputably not purely factual and uncontroversial information."). The existence of this dispute among experts means that the County loses.

The County asserts without support that the pamphlet's meaning "is a legal question not a factual one." Co.Br. 38. Not so. The pamphlet is not a contract or a statute or other legal document. As noted above, the test under *Zauderer* is how "a reasonable person" would read the document.[3] The onus is thus on the *County* to demonstrate that *no* reasonable person would understand the pamphlet as stating or implying a causal link, a burden that the County has not even attempted to carry. Here, at a minimum, reasonable people could read the pamphlet and come away with the conclusion, shared by all the plaintiffs and Prof. Kleck, that the pamphlet

---

[3] What a "reasonable person" might do or believe is normally a jury question. See, e.g., *United States v. Lopez,* 913 F.3d 807, 821 (9th Cir. 2019) (self-defense context).

18

is "unambiguously an assertion about causal effects" or at least implies such an effect. JA0138-JA0139. That means that the pamphlet is not "purely factual," and the County loses.

A "purely factual" statement in this case would read something like "suicide is statistically correlated with access to firearms, but such access has not been shown to be the cause of suicide." The suicide pamphlet is devoid of such language. "Correlation" is not mentioned. At the very least, the pamphlet uses the correlation to *imply* a causal connection, which is "junk science." JA0278-JA0280, JA0282, JA0284. The County is not Humpty Dumpty; it is not permitted to coerce the display and distribution of misleading literature that states or implies a causal link and then, when challenged, argue that the literature only asserts a mere correlation. *Zauderer* does not allow the County to compel misleading speech. See *CTIA*, 928 F.3d at 847 ("a statement may be literally true but nonetheless misleading and, in that sense, untrue"); *National Ass'n. of Wheat Growers v. Becerra*, 468 F.Supp. 3d 1247, 1261 (E.D. Cal. 2020) (enjoining compelled speech because the "statement is at a minimum misleading and therefore not factual and uncontroversial.").

## 2.     The literature is not "uncontroversial"

The County argues that it is not "anti-gun" and that the pamphlets do not "take sides in the American debate about gun safety." Co.Br. 36. Its amici are not

19

so shy and sly; they are openly hostile to firearms ownership.[4] Yet, the County and its amici do not dispute that compelling such speech requires the dealers to participate in expression that, in their view, demonizes firearm ownership (and dealers) by associating the mere sale or possession of these constitutionally protected items with suicide and illegal conflict resolution. The dealers are under no obligation to justify that view, as the right "not to speak" is protected by the First Amendment and needs no justification, but the dealers' view is perfectly understandable and reasonable. As Prof. Kleck notes, "implicit in the notion that owning a gun is a risk factor for suicide, and any reader would think suicide is a bad thing, then the implication is – the recommendation implied is don't own a gun." JA0063.

The policy reasons and ardent beliefs of the County and its amici do not trump the Constitution. Without satisfying the demands imposed by strict scrutiny, the County may not saddle plaintiffs with compelled speech just because it believes its policy is important, no matter how sincerely that belief is held. "While the law is free to promote all sorts of conduct in place of harmful behavior, it is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government." *Hurley*, 515 U.S. at 579. See also *Telescope Media*

---

[4] Those amici thus improperly raise arguments not properly before this Court. See note 1, *supra*.

*Group v. Lucero*, 937 F.3d 740, 754-55 (8th Cir. 2019) (same); *Greater Baltimore Center*, 879 F.3d at 110 (noting the "ideological implications" created by compelled literature).

The County's protestation of impartiality also rings hollow. The County does not dispute that the County's ordinance singles out firearms purchasers and dealers for special treatment. Indeed, the County touts this discriminatory emphasis as "sound public policy." Co.Br. 40. But suicide and conflict resolution problems are not remotely confined to gun owners. The suicide pamphlet states as much in listing numerous other "risk" factors" all of which can be found in the general population. JA0028. Similarly, the Conflict Resolution pamphlet (JA0033) addresses "unresolved conflicts" which likewise occur in the general population.

Yet, the County's ordinance is directed *solely* at firearms dealers and is thus wildly underinclusive. Such "[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown*, 546 U.S. at 800. See also *NIFLA*, 138 S. Ct. at 2378 (statutes that discriminate among speakers "run the risk that the State has left unburdened those speakers whose messages are in accord with its own views"); *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879 (9th Cir. 2018), *cert. denied,* 139 S.Ct. 2767 (2019) (same). If the County were truly

21

serious about pursuing its legitimate policy goals, the ordinance would not be limited to dealers.[5]

The County also asserts that such discrimination is permissible because firearms are the "most lethal means of suicide." (Co.Br. 42). That assertion is false. In fact, "[t]he best available national data indicates that there is no significant difference in the percent of suicide attempters who die between those who attempt suicide by hanging (the second-most common suicide method) and those who do so by shooting." JA0467. Both methods are lethal about 80% of the time, with some studies showing a low of 75% for shooting attempts to a high of 90% for hanging attempts. JA0481. As Prof. Kleck notes, "there are subtypes of most other suicide methods that are almost certainly 100% fatal, such as jumping from a 20th story window or a similarly high bridge or cliff, or swallowing 30 barbiturate tablets in combination with a pint of alcohol." JA0467. See also JA0199. Accordingly, "there is no justification for the County's ordinance to require only firearms dealers to distribute suicide prevention materials." JA0467-JA0468.

The County argues that the suicide pamphlet is sponsored in part by the NSSF and thus cannot possibly be viewed as anti-gun for that reason alone. Co.Br. 36. But the NSSF does not seek to impose its views on dealers, the County does.

---

[5] In a strawman, the County argues that is not required to "regulate every conceivable method of suicide." (Co.Br. 41). The underinclusiveness of the ordinance is just more evidence of the County's anti-gun bias, the point made in *Brown* and *NIFLA*.

The dealers' speech may not be compelled because doing so invades "the sphere of intellect and spirit which it is the purpose of the First Amendment ... to reserve from all official control." *303 Creative*, 143 S.Ct. at 2311 (citation and internal quotes omitted). That the County's views are supported by well-funded and vocal gun control proponents just serves to emphasize the importance of protecting the rights of plaintiffs from suppression.

The County also skips over that the NSSF had nothing to do with the County's "Conflict Resolution" pamphlet. Compelling dealers to display and distribute the "Conflict Resolution" pamphlet just feeds the highly offensive misconception popular among overzealous gun control advocates that gun owners are prone to violence and thus are uniquely in need of help in "resolv[ing] conflicts peacefully," a position endorsed by the County. Co.Br. 40. Prof. Kleck noted the same kind of anti-gun bias among researchers and journals. JA0237-JA0240, JA0383. As stated in *Stuart v. Camnitz*, 774 F.3d 238, 246 (4th Cir. 2014), "[l]isteners may have difficulty discerning that the message is the state's, not the speaker's, especially where the 'speaker [is] intimately connected with the communication advanced.'" Quoting *Hurley*, 515 U.S. at 576. Thus "an individual's 'right to tailor [his] speech' or to not speak at all 'applies ... equally to statements of fact the speaker would rather avoid." Id., quoting *Hurley*, 515 U.S. at 573. The County is indeed "taking sides."

In short, the County's literature states or implies that access to firearms by law-abiding persons in fact increases the risk of suicide and violent conflict resolution. The County (and its amici) enthusiastically embrace that view. Co.Br. 40-41. There is no other plausible reason to compel dealers (and only dealers) to display and distribute the literature. See JA0089-JA0090. With well-documented data, Prof. Kleck disputes that view as "probably false" and likely the product of anti-gun bias. At the very least, this subject is a "contested topic." *Recht*, 32 F.4th at 416-17. As stated by the D.C. Circuit in *NAM*, requiring a disclosure that "'publicly condemn[s]' the speaker 'makes the requirement more constitutionally offensive, not less so.'" 800 F.3d at 530.

## III.    THE EXCLUSION OF PROF. KLECK'S EXPERT REPORT AND TESTIMONY WAS ERROR

The sole basis for the district court's exclusion of Prof. Kleck's evidence was that "[f]or Mr. Kleck's expert report to be relevant, this Court must read words into the pamphlet that are not there." JA1684. Otherwise "Mr. Kleck's report would be relevant, and therefore admissible." JA1683. Thus, the only question is whether the district court erred in excluding all of Prof. Kleck's evidence because the court disagreed with his reading of the suicide pamphlet.

First, as discussed above, the district court itself misread the suicide pamphlet. That ruling is an error of law and is reviewed *de novo,* if, as the County insists, the document's meaning is a "legal question." Co.Br. 38. *In re Lipitor,* 892

24

F.3d 624, 632 (4th Cir. 2018). If it is a factual question, then the court made a clearly erroneous factual finding, and that is likewise an abuse of discretion. Id. In any event, applying *Zauderer* from the vantage point of what "a reasonable person might think," is a mixed fact and law question subject to de novo review. *Google LLC v. Oracle America, Inc*., 141 S.Ct. 1183, 1199 (2021).

Second, the County argues that under *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997), "it is 'not an abuse of discretion' for a district court to reject an expert's opinions where they are not 'sufficiently supported' by the underlying evidence." Co.Br. 41. That principle has no application here. This is not the type of situation where the expert's opinion is connected to the underlying data merely by an *ipse dixit*. That situation obtains only where "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. There is *no* "analytical gap" here. The district court did not purport to apply *Joiner*, it simply disagreed with Prof. Kleck's reading of the pamphlet and did so without regard to "what a reasonable person might think" about the pamphlet. The court's failure to apply that test was error.

Third, the district court egregiously overstepped its gatekeeping role. Under *Daubert*, a district court judge is a gatekeeper but in performing that function, "the focus, of course, must be *solely* on principles and methodology, *not on the conclusions that they generate.*" *Joiner*, 522 U.S. at 146, quoting *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 595 (1993) (emphasis added). "'[Q]uestions regarding the factual underpinnings of the [expert's] opinion affect the weight and credibility' of the witness' assessment, 'not its admissibility.'" *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (citation omitted). Thus, "[t]o determine whether an opinion of an expert witness satisfies *Daubert* scrutiny, courts *may not* evaluate the expert witness' conclusion itself, but *only* the opinion's underlying methodology." Id. (emphasis added). As noted in *United States v. Moreland*, 437 F. 3d 424, 431 (4th Cir. 2006), the expert testimony need not be "'irrefutable or certainly correct [because it is] subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." See also *Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4th Cir. 1999).

The district court's exclusion of Prof. Kleck's evidence cannot stand under these principles. The district court did not fault Dr. Kleck's "methodology," it merely faulted the conclusion he reached about the suicide pamphlet. That conclusion is for the factfinder, not the gatekeeper. See also *In Re: Lipitor*, 892 at 631 ("'[T]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule.'") (citation omitted). And the

district court does not sit as a factfinder on summary judgment, a point the County does not dispute.

Fourth, Prof. Kleck's report is also relevant because he states that alleged connection between suicide and firearms "is indisputably *not* purely factual and uncontroversial information." JA0466-JA0467 (emphasis in original). That conclusion is well supported by the data. JA0468-JA0477. The district court never addressed that conclusion or the data, which must also go to the factfinder. Nor did the court address the rest of Prof. Kleck's report and testimony. Rather, in the court's unseemly rush to judgment, the district court excluded **all** of Prof. Kleck's evidence based on nothing more than the court's disagreement with his reading of the suicide pamphlet. There is no basis or justification under *Daubert* or *Joiner* for such a wholesale exclusion of a renowned expert's evidence.

## IV.   THE DISTRICT COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT FOR PLAINTIFFS

Plaintiffs' opening brief makes clear that "the district court erred in applying *Zauderer*, and that point is enough to decide this case," Br. of Appellants at 51. The County does not address this point at all and thus agrees that it loses if *Zauderer* is not applicable. As detailed above and in plaintiffs' opening brief, *NIFLA* controls this case and under *NIFLA* plaintiffs are entitled to summary judgment. Plaintiffs are likewise entitled to prevail because the County's literature is not commercial speech, and it is not "purely factual and uncontroversial."

## CONCLUSION

The judgment below should be reversed, and the case remanded with instructions to enter judgment in favor of plaintiffs on plaintiffs' cross-motion for summary judgment.

Respectfully submitted,

*/s/ Mark W. Pennak*

MARK W. PENNAK
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd., Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671

July 31, 2023

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**MARYLAND SHALL ISSUE, INC.,** *et al.,*

      *Plaintiffs-Appellants,*           **No. 23-1351**

      **v.**

**ANNE ARUNDEL COUNTY,**
**MARYLAND**

      *Defendant-Appellee.*

### CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, the undersigned counsel here certifies that the forgoing "Reply of Appellants" contains 6,485 words, not counting those items which may be excluded under Rule 32(f), and uses a 14 point, Times New Roman proportional font.

*/s/ Mark W. Pennak*

Mark W. Pennak,

*Counsel for Plaintiffs-Appellants*

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**MARYLAND SHALL ISSUE, INC.,** *et al.,*

        *Plaintiffs-Appellants,*          **No. 23-1351**

        **v.**

**ANNE ARUNDEL COUNTY,
MARYLAND**

        *Defendant-Appellee.*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on July 31, 2023, a copy of the foregoing "Reply of Appellants" was served on all counsel for record via ECF service.


                       */s/ Mark W. Pennak*
                       MARK W. PENNAK
                       *Counsel for Plaintiffs-Appellants*