**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1351

MARYLAND SHALL ISSUE, INC.; FIELD TRADERS LLC; CINDY'S HOT
SHOTS, INC.; PASADENA ARMS, LLC; WORTH-A-SHOT, INC.,

Plaintiffs - Appellants,

v.

ANNE ARUNDEL COUNTY MARYLAND,

Defendant - Appellee.

-------------------------------------------------------

STATE OF MARYLAND; MATTHEW MILLER; DEBORAH AZRAEL; BRADY
CENTER TO PREVENT GUN VIOLENCE; MARYLANDERS TO PREVENT
GUN VIOLENCE, INCORPORATED; TIM CAREY; KELLY ROSKAM;
CONSTITUTIONAL ACCOUNTABILITY CENTER; AMERICAN MEDICAL
ASSOCIATION; MEDCHI; MARYLAND STATE MEDICAL SOCIETY;
AMERICAN ACADEMY OF PEDIATRICS; AMERICAN ACADEMY OF
PEDIATRICS, MARYLAND CHAPTER; MARYLAND PSYCHIATRIC
SOCIETY; WASHINGTON PYSCHIATRIC SOCIETY; DOROTHY PAUGH;
GWENDOLYN LA CROIX; CHERYL BROOKS; PATTI BROCKINGTON; GUN
OWNERS FOR SAFETY; DON BAUGHAN,

Amici Supporting Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Stephanie A. Gallagher, District Judge.  (1:22-cv-00865-SAG)

Argued:  December 8, 2023　　　　　　　　　Decided:  January 23, 2024

Before NIEMEYER, GREGORY, and HEYTENS, Circuit Judges.

------

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Gregory and Judge Heytens joined.

------

**ARGUED:** Mark William Pennak, LAW OFFICES OF MARK W. PENNAK, Chevy Chase, Maryland, for Appellants. William Ernest Havemann, HOGAN LOVELLS US LLP, Washington, D.C., for Appellee. **ON BRIEF:** Gregory J. Swain, County Attorney, Hamilton F. Tyler, Deputy County Attorney, Tamal A. Banton, Senior Assistant County Attorney, ANNE ARUNDEL COUNTY OFFICE OF LAW, Annapolis, Maryland; Neal Kumar Katyal, Simon Chin, HOGAN LOVELLS US LLP, Washington, D.C.; Eric Tirschwell, James Miller, Nina Sudarsan, EVERYTOWN LAW, New York, New York, for Appellee. Elizabeth B. Wydra, Brianne J. Gorod, J. Alexandra Rowell, CONSTITUTIONAL CENTER, Washington, D.C., for Amicus Constitutional Accountability Center. Anthony G. Brown, Attorney General, Robert A. Scott, Assistant Attorney General, Ryan R. Dietrich, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Amicus State of Maryland. Jim Davy, ALL RISE TRIAL & APPELLATE, Philadelphia, Pennsylvania, for Amicus Gun Owners for Safety. Paul Brzyski, Washington, D.C., Michael J. Dell, Aaron M. Jacobs, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, New York, for Amici American Medical Association; MedChi; The Maryland State Medical Society; American Academy of Pediatrics, Maryland Chapter; American Academy of Pediatrics; The Maryland Psychiatric Society; and Washington Psychiatric Society. Bradley S. Lui, Kerry C. Jones, MORRISON & FOERSTER LLP, Washington, D.C., for Amici Matthew Miller and Deborah Azrael. Arthur Luk, Roberta L. Horton, Hannah R. Leibson, ARNOLD PORTER KAYE SCHOLER LLP, Washington, D.C., for Amici The Brady Center to Prevent Gun Violence, Marylanders to Prevent Gun Violence, Tim Carey, and Kelly Roskam. Andrew R. Dunlap, Vivek V. Tata, T. Liam Murphy, Emma C. Holland, SELENDY GAY ELSBERG PLLC, New York, New York, for Amici Dorothy Paugh, Gwendolyn La Croix, Cheryl Brooks, Don Baughan, and Patti Brockington.

------

NIEMEYER, Circuit Judge:

Deaths by suicide have increased nationally over recent years, and now roughly 48,000 people die annually from suicide. And over 50% of those suicides were committed with firearms, roughly twice the number committed with the second most common means used, according to the Centers for Disease Control and Prevention.

Similar statistics are reflected in Anne Arundel County, Maryland, and the County accordingly declared "suicide a public health crisis." In response to that crisis, it enacted an ordinance entitled "Public Safety — Distribution of Literature to Purchasers of Guns or Ammunition," which requires the Anne Arundel County Department of Health to "prepare literature relating to gun safety, gun training, suicide prevention, mental health, and conflict resolution" and to distribute this literature to "all establishments that sell guns or ammunition" in Anne Arundel County. The ordinance also requires those establishments to make the literature "visible and available at the point of sale" and to distribute it "to all purchasers of guns or ammunition." An initial violation of the ordinance carries a $500 civil fine, and each subsequent violation carries a $1,000 civil fine.

As required by the ordinance, the Department of Health distributed two pieces of literature to gun dealers in Anne Arundel County for distribution to purchasers of guns or ammunition — an eight-page pamphlet entitled "Firearms and Suicide Prevention" and a single page flyer providing information about Anne Arundel County's resources for "conflict resolution," including where to obtain a suicide-prevention toolkit.

Four gun dealers in Anne Arundel County, as well as Maryland Shall Issue, Inc., a Maryland corporation dedicated to the preservation and advancement of gun owners'

rights, commenced this action against Anne Arundel County, contending that the ordinance compels gun dealers to convey the County's message "relating to gun safety, gun training, suicide prevention, mental health, and conflict resolution" to their customers, in violation of their "First Amendment right 'not to speak' on such subjects." They sought declaratory and injunctive relief, as well as compensatory damages.

On the parties' cross-motions for summary judgment, the district court granted summary judgment to Anne Arundel County, concluding that the literature distributed pursuant to the ordinance was constitutionally permissible because it compelled commercial speech that was factual and uncontroversial and furthered a government interest, complying with the test established by *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985). In the course of its ruling, the court also excluded the plaintiffs' expert witness's report because the expert based his opinions on an interpretation that the distributed literature conveyed the message that access to firearms *causes* suicide and therefore discouraged the purchase of firearms. Because the court read the literature not to convey that message, it ruled that the expert's opinions were irrelevant.

From the district court's order dated March 21, 2023, the plaintiffs filed this appeal, challenging both of the district court's rulings. We affirm.

I

Following the 2018 mass shooting at the *Capital Gazette* newspaper in Annapolis, which was deeply traumatic to the Anne Arundel County community and widely

publicized, the Anne Arundel County Executive issued an executive order creating a task force to address how the County could use its public health system to reduce gun violence. As part of that ongoing effort, the County, by resolution, also declared suicide "a public health crisis," recognizing that, "according to the Task Force, from 2013 to 2017 there were 209 deaths in Anne Arundel [County] caused by guns and, of those 209 deaths, 141 (67%) were deaths by suicide." Moreover, it found that "suicide deaths have increased." It recognized that of all suicides in the County, guns were the most common means used.

To address that public health crisis, the County enacted the 2022 ordinance that required the Department of Health to prepare literature for distribution to gun purchasers through gun dealers in the County. In fulfilling this obligation, the Department used a pamphlet created by a collaboration of the American Foundation for Suicide Prevention, a leading national nonprofit suicide-prevention organization, and the National Shooting Sports Foundation, "the firearm industry trade association." These two organizations developed the pamphlet as a resource "to help firearms retailers, shooting range operators and customers understand risk factors and warning signs related to suicide, know where to find help and encourage secure firearm storage options." And they asked retailers and ranges to distribute the material to customers "because doing so [would] help save lives."

While the County did not itself prepare the pamphlet, it did prepare a one-page flyer providing County resources for conflict resolution. That flyer stated, "Conflict Resolution is a process to help you find the best way to resolve conflicts and disagreements peacefully." The flyer provided contact information for County resources, including a County suicide-prevention toolkit.

5

As required by the 2022 ordinance, the Department of Health distributed the pamphlet and flyer to gun dealers in Anne Arundel County and directed them to display the literature in their stores and provide copies to customers purchasing guns or ammunition.

Plaintiffs commenced this action shortly after the effective date of the ordinance, seeking relief from the ordinance on the ground that it compels speech that is contrary to their interests. Relying on the proffered report of their expert witness, they contended that the literature — the pamphlet in particular — conveyed the message that guns *cause* suicide and that therefore the real purpose of the literature was to discourage the purchase and possession of firearms by linking their possession to suicide. Thus, they contended that the literature was controversial speech impermissibly compelled by the County, in violation of the First Amendment.

On cross-motions for summary judgment, the district court, in a 31-page opinion, granted judgment to Anne Arundel County. The court concluded that the ordinance compelled *commercial* speech mandating a quintessential health-and-safety warning about commercial products and therefore was constitutional under the Supreme Court's decision in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985). It explained that the pamphlet conveyed factual and uncontroversial information in stating that access to firearms was a "risk factor" for suicide, noting that such information was "purely factual" and "well-documented." The court recognized that "firearm regulation in the United States is a highly controversial topic" but noted that the "pamphlets themselves only speak to the uncontroversial topics of suicide prevention and nonviolent

conflict resolution." Finally, the court found that the message of the pamphlet and flyer was "reasonably related" to Anne Arundel County's interest in preventing suicide and violence and that the distribution of the pamphlet and flyer was not "unduly burdensome."

In its opinion, the court also excluded the plaintiffs' expert report because the opinions given there were premised on the assumption that the County's pamphlet asserted a *causal* connection between access to guns and suicide. The court, however, concluded that the pamphlet, rather than stating a causal link between firearm access and suicide, merely "identifie[d] access to firearms and other lethal means as a 'risk factor,' and nothing more." Accordingly, it found the testimony of the expert irrelevant and therefore excluded it.

From the district court's order dated March 21, 2023, the plaintiffs filed this appeal, challenging both the district court's First Amendment ruling and its ruling excluding their expert witness's report.

II

The district court held that the Anne Arundel County ordinance and the disclosures required by it were constitutional, finding that the disclosures satisfied the constitutional limitations on compelled commercial speech, as set forth in *Zauderer*. The plaintiffs contend, however, that the district court erred in finding that the *Zauderer* standard was satisfied and that the court should have applied the Supreme Court's holding in *National Institute of Family and Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361 (2018), and found that the ordinance and compelled disclosures violated their First Amendment rights.

In particular, they challenge the district court's findings (1) that the ordinance amounted to "commercial speech" and (2) that the speech was "factual and uncontroversial," both of which are required to be constitutional under *Zauderer*.  They note that the Anne Arundel County ordinance requires them to distribute literature, maintaining that this effectively compels them to speak in support of views that are not factual and that they find objectionable.  They argue that the ordinance is an instrument for Anne Arundel County to publish an ideological point of view, to tell gun dealers what they must say, and to infringe on the right "not to speak," all in violation of the First Amendment.

While the plaintiffs acknowledge that product safety warnings "are of a type 'long considered permissible'" under the *Zauderer* jurisprudence, they reject the notion that the County's ordinance amounts to such a safety warning.  They note, "Every purchaser of firearms from a licensed dealer already knows that a firearm can be dangerous if misused." Therefore, they argue, the County's ordinance has a different purpose.  They reason that if health and safety relating to suicide were the real purpose, the pamphlet is "underinclusive" and should also have warned about the use of rope because "hanging is an equally lethal form of suicide and the second most common mode of suicide."  Yet, the County's literature made no mention of suicide by rope.  Thus, they conclude that the literature's "focus on firearms and only firearms (and ammunition for firearms) makes plain that the real purpose of the literature [was] to discourage the purchase and possession of firearms and ammunition by linking possession of firearms to suicide and illegal conflict resolution."  They add, "[t]he County ha[d] no legitimate interest in discouraging or demonizing the exercise of Second Amendment rights."  The plaintiffs thus "strongly take

issue with the County's attempt to link firearms to suicides and illegal conflict resolutions," maintaining in essence that the County was sponsoring literature conveying the message that the public should not buy guns because they cause suicides. And in these circumstances, they argue, *NIFLA*, not *Zauderer*, applies to render the ordinance unconstitutional.

These positions taken by the plaintiffs present the issues (1) whether the district court's interpretation of the pamphlet's language is correct as a matter of law; (2) whether the literature was *commercial* speech; and (3) whether the compelled speech was *factual and uncontroversial*. We address them in order.

### A

The pamphlet, which is the central object of this appeal, must be taken for what its plain language says. And its meaning is a question of law for a court to resolve. *See, e.g.*, *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1278 (9th Cir. 2023); *CTIA-The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 846–47 (9th Cir. 2019).

In this case, the district court read the pamphlet and held, as a matter of law, that its message was as follows:

> The pamphlet limits itself to identifying the risk that a firearm, like other items, could be used by a person contemplating suicide, and it focuses its message on informing gun owners how to safely store their firearms. . . . The pamphlet only identifies access to firearms as a risk factor.

The plaintiffs, however, read the pamphlet to link firearms and suicides *causally*. They argue that by indicating that *access* to firearms *increases the risk* of suicide, the pamphlet's message is that firearms *cause* suicide. And this message, they contend, "discourage[s] the

purchase and possession of firearms and ammunition by linking possession of firearms to suicide." They essentially maintain that the thrust of the message conveyed is, "Don't buy guns because they cause suicides," which is in conflict with their interests in selling firearms and protecting gun owners' rights.

On appeal, we review the district court's interpretation of the pamphlet de novo, and on that basis we also determine its meaning as a matter of law. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 686 F.3d 889, 894, 906 (8th Cir. 2012) (en banc). In that posture, we conclude that the pamphlet does not reach as far as the plaintiffs maintain and that any reasonable reader would understand from the pamphlet that it only gives the message that *because firearms are the leading means by which suicide is committed, firearms should be stored safely to reduce suicides by firearms*. That conclusion, we believe, is supported by the text of the pamphlet.

The pamphlet, which is 6 x 6 inches, contains eight pages. *Page one* contains the title of the pamphlet, "Firearms and Suicide Prevention," in front of a picture of a smiling man and includes at the bottom the pamphlet's cocreators — the National Shooting Sports Foundation and the American Foundation for Suicide Prevention. *Page two* is entitled "What Leads to Suicide?" and explains that there is *no single cause*. Rather, it explains, numerous mental health circumstances and conditions have been found to be causative, including "depression, anxiety and substance use problems." It does not mention firearms or in any way suggest that they are a cause. *Page three* is simply a picture. *Page four* is entitled "Some People are More at Risk for Suicide than Others" and identifies three categories of risk factors, including "health factors," "environmental factors," and

10

"historical factors." Under the "environmental factors," it lists four categories, including "[a]ccess to lethal means including firearms and drugs." Finally, at the bottom corner of the entire page is a boxed summary message reading, "Risk factors are characteristics or conditions that increase the chance that a person may try to take their life." *Page five* is entitled "Take Suicide Warning Signs Seriously" and lists three generalized categories of signs, including "talk," "behavior," and "mood." Under each category are numerous examples. Again at the bottom of the page is a boxed summary message stating, "Most people who take their lives exhibit one or more warning signs, either through what they say or what they do." *Page six* is entitled "Reaching Out Can Help Save a Life" and lists five different methods by which a person can help prevent a suicide. Another boxed message in the bottom corner states, "Firearms are used in 50% of all suicides in the United States." *Page seven* is entitled "Firearms Storage For Your Lifestyle" and suggests four different ways by which firearms may be stored safely. And *page eight* is entitled "Resources" and provides the contact information for six different suicide intervention organizations. At the bottom of the page are the logo-signatures of the National Shooting Sports Foundation and the American Foundation for Suicide Prevention.

We conclude that this pamphlet, taken as a whole, *see Recht v. Morrisey*, 32 F.4th 398, 417 (4th Cir. 2022), addresses suicide as a public health and safety concern and advises gun owners on how they can help. In particular, because firearms are the leading means for committing suicide, the pamphlet provides information on (1) recognizing the signs of suicide to spread awareness and (2) storing guns safely to take away the leading means of suicide. While, in conveying that message, it points out that "access" to firearms

is a "risk factor," we do not read the pamphlet to suggest to the reader that he or she should not purchase a firearm. More particularly, we do not read it to suggest to firearm purchasers that firearms should not be purchased because doing so *causes* suicide. Rather, the pamphlet is more in line with other similar safety warnings — widely applicable and accepted — that gun owners should store guns safely, especially to prevent misuse and child access. *See, e.g.*, 27 C.F.R. § 478.103; *see also* N.C. Gen. Stat. § 14-315.2; Fla. Stat. § 790.175; Tex. Penal Code Ann. § 46.13(g).

Accordingly, we affirm the district court's reading of the pamphlet and thus, with that understanding of the pamphlet's message, address the First Amendment issues.

B

Traditionally, commercial speech was found not to implicate the First Amendment. *See Recht*, 32 F.4th at 407; *Valentine v. Chrestensen*, 316 U.S. 52, 54 (1942). This changed, however, with the Supreme Court's decision in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976), where the Court established that restrictions on commercial speech are subject to First Amendment scrutiny. The current jurisprudence relevant to this appeal was established in *Zauderer*, the seminal First Amendment case on compelled commercial disclosure requirements. In *Zauderer*, the Court held that compelled commercial speech is constitutional under the First Amendment so long as (1) it is "purely factual and uncontroversial"; (2) it is "reasonably related to the State's interest in preventing deception of consumers"; and (3) it is not "unjustified or unduly burdensome." 471 U.S. at 651. And since *Zauderer*, courts

unanimously have broadened the scope of the State's interest to other governmental interests, including "protecting human health." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 115 (2d Cir. 2001); *see also Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (en banc) (reaffirming that "*Zauderer* provides the appropriate framework to analyze a First Amendment claim involving compelled commercial speech — even when the government requires health and safety warnings, rather than warnings to prevent the deception of consumers" and noting that the circuits have "unanimously" held as much); *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 34 (D.C. Cir. 2014) (en banc) (Kavanaugh, J., concurring) (noting a "country-of-origin labelling requirement" satisfies *Zauderer* because it "is reasonably related to the Government's longstanding interest in supporting American farmers and ranchers").

In challenging the applicability of *Zauderer*, the plaintiffs contend first that the pamphlet does not amount to *commercial* speech of the type addressed in *Zauderer* because it does not "propose a commercial transaction." They argue that the literature was not "an advertisement," which is often recognized as commercial, and that the gun dealers have no "economic motivation for the speech," explaining somewhat sarcastically that "[a]pparently, in the County's view, people who go into gun stores or buy ammunition or firearms are uniquely in need of education about suicide and 'conflict resolution.'" In addition, they claim that the literature "does not apply to any specific product or service or purport to warn consumers that the product has hidden dangers that justify a warning." In short, they maintain the pamphlet is not confined to economic matters but extends to

13

political or ideological preferences of the government and therefore the compelled distribution of the pamphlet is unconstitutional by virtue of *NIFLA*.

On this issue — whether the speech here is commercial — we note first that the Anne Arundel County ordinance requires the distribution of literature by gun dealers, who are commercial entities, that advises purchasers of guns to store them safely and thereby reduce their misuse for suicide. Moreover, it requires that the literature be displayed "at the point of sale," *i.e.*, in the gun dealer's retail store. Thus, it is facially apparent that the required disclosures are a safety advisory linked to the sales of guns and ammunition, which are commercial transactions. *See Am. Meat Inst.*, 760 F.3d at 26 ("Of course to match *Zauderer*, logically, the disclosure mandated must relate to the good or service offered by the regulated party").

In arguing nonetheless that the speech is not commercial, the plaintiffs focus primarily on the fact that it does not "propose a commercial transaction," one Supreme Court definition of "commercial." This argument, however, understands "commercial" far too narrowly.

By its plain meaning, commercial speech is speech specifically related to commercial transactions. Thus, to be sure, speech that "propos[es] a commercial transaction" is commercial. *Zauderer*, 471 U.S. at 637 (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56 (1978)). But speech is also commercial if it is "related solely to the *economic* interests of the speaker and its audience." *Cent. Hudson Gas and Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980) (emphasis added). And speech connected with the sale of a good or a service — promoting the product or

service, explaining it, or giving warnings about it — is commercial; it serves either the interests of the seller or "assists consumers and furthers the societal interest." *Id*. Thus, while commercial speech includes speech proposing a commercial transaction, it also includes the advertising and promotion of products and services, assembly or user instructions, information about the product or service, disclaimers, and warnings on health and safety. As Justice Stevens observed in *Rubin v. Coors Brewing Co.*, commercial speech includes "'Surgeon General's Warning' labels on cigarettes," "labeling requirements for food products," "labeling requirements for drug products," and "registration statement[s]" for securities. 514 U.S. 476, 492 & n.1 (1995) (Stevens, J., concurring).

With this more complete understanding of commercial speech, we readily conclude that the compelled speech at issue is commercial. While the literature does not propose a commercial transaction, as the plaintiffs correctly observe, it nonetheless does provide warnings of risks and proposed safety steps with respect to firearms sold by gun dealers in commercial establishments. Firearm retailers in Anne Arundel County are required to provide the specified literature in connection with the sales of firearms and ammunition to purchasers, which are commercial transactions. We conclude therefore that the mandated disclosure in this case falls squarely in the scope of what is understood to be commercial speech, and it is readily distinct from governmental attempts to "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *Zauderer*, 471 U.S. at 651 (internal quotations omitted).

We thus affirm the district court's conclusion that the speech at issue in this case constitutes commercial speech.

C

The plaintiffs also contend that the compelled speech is "neither factual nor uncontroversial," as required by *Zauderer*, because (1) it suggests that firearms cause suicide, which they contend is *not factual*, and (2) its "real purpose . . . is to discourage the purchase and possession of firearms and ammunition," which they contend is *controversial*. As their expert witness testified, they maintain that "any reader would think suicide is a bad thing, [and] then the implication is — the recommendation implied is don't own a gun." They conclude, accordingly, that the criteria for *Zauderer* are not fulfilled, and that the outcome of this case is governed by *NIFLA*, which held that a mandatory, *controversial* disclosure was unconstitutional.

In *NIFLA*, the Supreme Court had before it a California statute requiring licensed clinics that primarily served pregnant women to give specified notices, including a notice that California provides free or low-cost services for abortion and a notice of the telephone number to obtain the service. 138 S. Ct. at 2368. A licensed pregnancy center opposed to abortions and others challenged the statute, arguing that the notice requirements violated their First Amendment rights. The Supreme Court agreed and struck them down. In doing so, it emphasized that the notices concerned government-drafted speech about the availability of state-sponsored abortions — "the very practice that petitioners are devoted to opposing," *id*. at 2371 — and that the notices thus were hardly uncontroversial. While

the State urged that the Court uphold the statute under *Zauderer*, the Court held that

*Zauderer* "does not apply here," *id*. at 2372, explaining:

> Most obviously, the licensed notice is not limited to "purely factual and uncontroversial information about the terms under which . . . services will be available." *Zauderer*, 471 U.S. at 651; *see also Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 573 (1995) (explaining that *Zauderer* does not apply outside of these circumstances). The notice in no way relates to the services that licensed clinics provide. Instead, it requires these clinics to disclose information about [*S*]*tate*-sponsored services — including abortion, anything but an "uncontroversial" topic. Accordingly, *Zauderer* has no application here.

*Id*. (cleaned up).

Thus, the *NIFLA* holding would apply if the plaintiffs could show, as they try, either that the pamphlet is not factual or that it is controversial. In this case, however, the two are part of the same argument, as they rely on the plaintiffs' interpretation of the pamphlet that it communicates a causal relationship between firearms and suicide. The plaintiffs' factual claim is that there is no study that demonstrates that guns cause suicide. And based on that claim, they conclude that the pamphlet is controversial, arguing that its real purpose is to discourage the purchase of firearms despite the fact that such purchases are protected by the Second Amendment. This argument thus reduces to whether the pamphlet does indeed say that firearms cause suicides because the plaintiffs' "controversial" argument follows only from their "factual inaccuracy" argument.

As we have noted above, we do not read the pamphlet to suggest that firearms cause suicide. Rather, the pamphlet conveys (1) that there is "no single cause" for suicide but that it occurs most often "when several stressors and health issues converge to create an experience of hopelessness and despair"; (2) that 50% of all suicides are committed with

firearms; (3) that *access* to firearms is a "risk factor" that increases "the chance" of suicide; and (4) that the risk can be reduced by the safe storage of firearms. These statements are factual and not controversial. The pamphlet does not suggest that firearms *cause* suicide; indeed, as to the cause, the pamphlet identifies other causes such as mental conditions, but not firearms. It does state that *access* to guns increases the *risk* of suicide because guns are the primary means for committing suicide. This, however, is merely a logical syllogism: If guns are the primary means of suicide and if guns are not accessible to persons with suicidal ideation, then the number of suicides would likely decline. The pamphlet is thus factual and therefore, in this case, also uncontroversial.

As such, the *NIFLA* holding is inapplicable. Indeed, *NIFLA* confirms that *Zauderer* is the appropriate lens through which we are to analyze the compelled speech in these circumstances. As the *NIFLA* Court explained, it did "not question the legality of . . . purely factual and uncontroversial disclosures about commercial products." *NIFLA*, 138 S. Ct. at 2376. And the reference to "purely factual and uncontroversial disclosures" is a reference to the *Zauderer* test. *See* 471 U.S. at 651 (approving compelled commercial disclosures that contain "purely factual and uncontroversial information").

In short, based on our reading of the pamphlet, which affirms the district court's reading, we conclude that its contents are factual and uncontroversial, and *Zauderer* thus controls the outcome here.

D

While we conclude that the speech at issue here is commercial speech and that it is factual and uncontroversial, *Zauderer* also requires, for such speech to be constitutional, that it be "reasonably related" to the County's interests and not be "unjustified or unduly burdensome." 471 U.S. at 651.

The plaintiffs do not mount a serious challenge with respect to these requirements, and we have no trouble concluding that the mandated literature satisfies them. It is elemental that government — here, Anne Arundel County — has an interest in the health and safety of its citizens and, in particular, an "interest in preventing suicide, and in studying, identifying, and treating its causes." *Washington v. Glucksberg*, 521 U.S. 702, 730 (1997). And, as the statistics demonstrate, this interest is not "purely hypothetical." *Recht*, 32 F.4th at 419 (quoting *NIFLA*, 138 S. Ct. at 2377); *see also id.* (finding a disclosure justified when compelled "[i]n response to concrete concerns supported by empirical evidence"). The leading method for committing suicide in Anne Arundel County is with a firearm. And the Anne Arundel County Council passed its 2022 ordinance in the wake of a resolution that declared "suicide a public health crisis" after finding that suicides in the County had increased in the preceding five years. While the plaintiffs argue briefly that the County "has no legitimate interest in discouraging or demonizing the exercise of Second Amendment rights," this argument is based on a reading of the literature that we reject, as explained above.

Further, the mandated disclosure is reasonably related to these interests. The pamphlet explains the suicide crisis and the role that firearms play in it, suggesting at

bottom that gun purchasers can assist in preventing suicide by (1) recognizing warning signs, (2) referring those suffering to helpful resources, and (3) safely storing their guns to remove the principal means. This is in direct support of the County's interests.

We also conclude that the compelled display and distribution of the pamphlet and flyer in this case are not "unjustified or unduly burdensome." *Zauderer*, 471 U.S. at 651. First, the pamphlet and flyer are not "unjustified," as the crisis to which they respond was genuine and backed up by uncontroverted empirical data — that two-thirds of all firearm deaths in the County were by suicide; that firearms were the main means by which suicides were committed in the County; and that suicides in the County were increasing.

Second, the mandated disclosures — the pamphlet and the flyer — are not "unduly burdensome." There is no threat that the pamphlet and the flyer will "drown[] out the [gun dealers'] own message." *NIFLA*, 138 S. Ct. at 2378. Moreover, the County ordinance does not burdensomely require firearms and ammunitions retailers to include on "all 'print and digital advertising materials'" a "government-drafted statement," *id.*, or cover 20% of their products' advertising and logo with a warning, *Am. Beverage Ass'n*, 916 F.3d at 753, 757. Thus, the pamphlet and flyer do not commandeer or overwhelm any message that the gun dealers would wish to make to gun purchasers. Rather, the gun dealers are required only to make the pamphlet and flyer — which were prepared and provided by the County at no cost to the gun dealers — "visible and available at the point of sale" and "distribute [them] to all purchasers of guns or ammunition." Complying is as simple as having the literature at the checkout counter and including it in the bag with the purchased goods. This need only take seconds.

\*     \*     \*

At bottom, we conclude that the district court properly applied *Zauderer* to address the plaintiffs' First Amendment challenge to the County's mandatory disclosure and that, under *Zauderer*, the literature mandated by the County for distribution to gun dealers and in turn to their customers is not unconstitutional. Accordingly, we affirm the district court's First Amendment ruling.

III

The plaintiffs also contend on appeal that the district court abused its discretion in excluding the report of the plaintiffs' expert witness, Dr. Gary Kleck. As noted above, Dr. Kleck read the pamphlet mandated for distribution to communicate, in essence, that guns *cause* suicide. Based on that understanding of the pamphlet, he concluded, in his expert opinion, that the pamphlet was not factual and therefore was controversial because "[t]here is at present no reliable body of scientific evidence to support the County's claims." He reasoned that in the absence of such scientific evidence, the County's claim that guns cause suicide is "at best highly questionable; at worst, it is false."

Because the district court read the same pamphlet to assert not a "causal" relationship between firearms and suicide, but a "correlative" one, it found that Dr. Kleck's opinion, based on a misreading of the pamphlet, was irrelevant to the issues in the case and therefore excluded his report.

We agree with the district court that Dr. Kleck's opinion that the pamphlet was not factual and therefore was controversial was predicated on his reading of the pamphlet as

asserting that firearms cause suicide. Because we conclude that the pamphlet does not make that claim, we also conclude that the district court did not abuse its discretion in excluding Dr. Kleck's report. *See United States v. Iskander*, 407 F.3d 232, 238 (4th Cir. 2005) (noting that district courts are given "considerable discretion to determine whether to admit expert testimony"); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("An additional consideration under [Federal Rule of Evidence] 702 — and another aspect of relevancy — is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute" (cleaned up)).

IV

This case is about a pamphlet that Anne Arundel County requires be provided to purchasers of guns in the County as a health and safety advisory, informing purchasers of the nature, causes, and risks of suicides and the role that guns play in them. It ultimately encourages purchasers to store their guns safely to help reduce suicides in the County.

The plaintiffs, however, are attempting to make the pamphlet about something more. Fearing that linking this disclosure with gun sales in the County would somehow undermine gun purchasers' and owners' Second Amendment rights, the gun dealers and Maryland Shall Issue mounted this First Amendment challenge, arguing that the pamphlet is not compelled commercial speech of the limited kind authorized by *Zauderer*. The plaintiffs' fear, however, is unfounded. We conclude that the pamphlet is simply, and no more, a public health and safety advisory that does not discourage the purchase or ownership of guns. And we are confident that gun purchasers in Anne Arundel County

22

will recognize it as such.  While such an advisory surely does not discourage gun ownership or undermine Second Amendment rights, it does encourage generous responses to a serious public health issue, and gun dealers might well find it admirable to join the effort.

The judgment of the district court is

AFFIRMED.